UNITED STATES of America, Appellee,

v.

**Michael Bartholomew CARPER,**
**Appellant.**

UNITED STATES of America, Appellee,

v.

**Juliette M. STARK, Appellant.**

UNITED STATES of America, Appellee,

v.

**Pamela STARK, Appellant.**

Nos. 90–3077, 90–3078 and 90–3079.

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1991.

Decided Aug. 27, 1991.

Rehearing Denied Sept. 26, 1991.

Michael J. Poepsel, Omaha, Neb., for Michael Carper.

John B. Schuster, Des Moines, Iowa, for Pamela Stark.

Mary C. Gryva, Omaha, Neb., for Juliette Stark.

Stephen P. O'Meara, argued (Ronald M. Kayser, on brief), Des Moines, Iowa, for appellee.

Before ARNOLD and MAGILL, Circuit Judges, and LARSON, Senior District Judge.*

ARNOLD, Circuit Judge.

Michael Bartholomew Carper appeals his convictions for conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846, possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1), and use of a firearm in connection with a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1). Juliette Stark and Pamela Stark appeal their convictions and sentences for conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846. We affirm in part and reverse in part.

On March 22, 1990, a grand jury sitting in the Southern District of Iowa indicted Carper, the Starks, Daniel Knutson, and James Baughman. The indictment charged, among other things, that Carper, living in Beebeetown, Iowa, conspired with Pamela and Juliette Stark, sisters living in Omaha, Nebraska, to distribute methamphetamine from January 1, 1988, to February 27, 1990. The indictment also charged Carper with possessing both methamphetamine and marijuana with the intent to distribute them, and using a firearm in connection with a drug-trafficking crime.

After a five-day joint trial, the jury acquitted Knutson and Baughman on the conspiracy charges, and Carper on the marijuana-possession charge. The jury returned guilty verdicts on the remaining charges. On December 7, 1990, the District Court sentenced Juliette Stark to seventy-two months' imprisonment and four years' supervised release, and Pamela Stark to one hundred and thirty-five months' imprisonment and five years' supervised release. The Court sentenced Carper to one hundred and thirty-two months' imprisonment for the conspiracy and possession convictions to be followed by a mandatory five-year sentence for the firearm conviction and five years of supervised release. These appeals followed.

## I.

■ Carper raises two arguments on appeal. His first argument is that the District Court erred by denying his motion for a mistrial. Carper based his motion on the government's failure to disclose, until the fourth day of trial, two statements he made to the police. This failure to disclose, he argues, violates Federal Rule of Criminal Procedure 16(a)(1)(A), providing in relevant part that the government shall disclose "the substance of any oral statement which [it] intends to offer in evidence ... made by the defendant whether before or after arrest in response to interrogation...."

The government concedes it violated Rule 16(a)(1)(A), but argues that this violation is not reversible error. We agree. "Failure to comply with Rule 16(a)(1)(A) is not grounds for reversal unless the nondisclosure prejudiced the substantial rights of the defendant." *United States v. Brown*, 871 F.2d 80, 82 (8th Cir.1989). Carper cannot show prejudice. Although the District Court originally ruled that the government could use the statements for impeachment purposes should Carper take the stand, Trial Transcript at 529–31, it later ruled that the government could not use the statements at all. *Id.* at 771. Carper also did not use them in his defense, since the statements were inculpatory.[1] Thus, contrary to Carper's assertions, the government's failure to disclose the statements did not prejudice his rights.

Carper's second argument is that his conspiracy conviction must be reversed because the District Court committed prejudicial evidentiary errors during the course of the trial. He claims the government failed to demonstrate under Federal Rule of Evidence 801(d)(2)(E) that it was more likely than not that certain statements were made by the defendants during the

---

* The Hon. Earl R. Larson, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. Carper's argument that the government's nondisclosure violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), is without merit. Inculpatory statements are not subject to *Brady*. See, *e.g., United States v. Thomas*, 543 F.2d 1226, 1228 n. 4 (8th Cir.1976) (per curiam), *cert. denied*, 429 U.S. 1051, 97 S.Ct. 764, 50 L.Ed.2d 768 (1977).

course and in furtherance of the conspiracy. The five statements he challenges are: government exhibits 5A and 6A, records seized from Pamela Stark's and Carper's homes; Dass Allen's testimony that Pamela Stark told him she was going to Michael's house; Officer Roger Martin's testimony relating what Knutson told him after being arrested; and Charles Schmidt's testimony that Knutson told him his drug source was in Iowa. Except for Knutson's statement to Martin, which we discuss separately, we reject Carper's assertion that the statements were improperly admitted.

■ As Carper correctly notes, in order to admit statements under the co-conspirator exception to the rule against hearsay, the government need only demonstrate the conspiracy by a preponderance of the evidence. Moreover, after the Supreme Court's decision in *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), the government may meet its burden using the disputed statements themselves.

■ The government here clearly met its burden for the admission of the co-conspirator statements by proving the conspiracy by a preponderance of the evidence. The disputed statements themselves tend to show the existence of the conspiracy. Exhibit 6A, containing records maintained by Carper, had Pamela Stark's fingerprints on it. One of the records in Exhibit 6A contains figures which match exactly figures contained in one of Pamela Stark's drug records, Exhibit 5A.[2] Knutson's statement that his source was in Iowa and Pamela Stark's statement that she was going to Michael's also tend to show the conspiracy among the defendants.

Evidence independent of the challenged statements likewise supports their admissibility. Allen purchased methamphetamine from both Juliette and Pamela Stark.

While accompanied by Pamela Stark, Allen met Carper at Juliette Stark's house. Allen believed Carper was Pamela Stark's drug source. Exhibit 5C, one of Pamela Stark's records, contains an entry with the letters "MBC," Carper's initials. Juliette Stark's address book contained Carper's telephone number. Juliette Stark told two of her customers, the Schoenings, that her source was "up north" or in Missouri Valley, Iowa, approximately fifteen to twenty miles from where Carper lived. During the period of the conspiracy, Juliette Stark telephoned Carper's house five times, and he telephoned her once. Carper's neighbors saw cars periodically driven by the Starks parked outside his house. Several witnesses testified that they directly purchased methamphetamine from either Pamela, Juliette, or Carper.

■ Although we reject Carper's arguments with respect to four of the five statements he challenges, we agree with him that Knutson's statement to Officer Martin was improperly admitted. Statements under Rule 801(d)(2)(E) are admissible if they are made by a co-conspirator during the course and in furtherance of the conspiracy. After Knutson's arrest, he told Officer Martin he got his methamphetamine from a "source." Officer Martin repeated this statement in his testimony. Trial Transcript at 363. Since Knutson made the statement after his arrest, it could not have been made in furtherance of the conspiracy. See, *e.g., United States v. Williams*, 548 F.2d 228, 232 (8th Cir.1977).

■ While admission of the statement was error, we conclude the error was harmless. Officer Martin testified that Knutson told him he had purchased his methamphetamine from a source. This testimony was of little probative value. Neither Knutson nor Martin elaborated on this statement. Even without this testimony, the jury was

---

**2.** Carper claims the government failed to prove Exhibit 6A contained drug records. We disagree. Sergeant William Agnew of the Omaha Police Department gave his expert opinion that Pamela Stark's notes were drug records. After receiving methamphetamine on credit from Pamela, Dass Allen saw her write down his name and the amount he owed. Carper's notebook had Pamela Stark's fingerprints on it and contained notes identical to notes in Pamela Stark's records. From this evidence, it is reasonable to infer that Carper's notes were also drug records.

likely to assume Knutson received his methamphetamine from someone else. The jury already knew Knutson's source was in Iowa. That testimony, which we have held was properly admitted, was more harmful to Carper than Knutson's statement that he got his drugs from an unnamed source. Having concluded Carper suffered no prejudice from any trial errors, we affirm his conviction.

## II.

### A.

■ The Stark sisters likewise attack their conviction on two grounds. First, they claim insufficient evidence supports their conspiracy convictions. We reject Pamela Stark's claim, but agree that insufficient evidence supports Juliette Stark's conviction. We are mindful of our obligation to view the evidence in the light most favorable to the government, but we nevertheless conclude it failed to prove beyond a reasonable doubt that Juliette Stark conspired with Carper to distribute methamphetamine.

There is evidence that Carper and Juliette associated, but there is not enough evidence linking this association to drugs. Allen indicated that he met Carper while visiting Juliette's home with Pamela Stark. During the period of the alleged conspiracy, five telephone calls were made from Juliette's home to Carper's. One telephone call was made from Carper's home to Juliette's home. Juliette's mother once saw Juliette and Carper in a restaurant together. The most damaging evidence against Juliette and Carper is Juliette's statements to the Schoenings that her drug source was "up north," or in "Missouri Valley," fifteen or twenty miles from where Carper lived. The Schoenings admitted, however, that Juliette never mentioned this source's name. The only apparent connection between the Starks with respect to methamphetamine distribution is that on separate occasions they each sold methamphetamine to Dass Allen.

There is also evidence that Juliette used and dealt methamphetamine. In a search of Juliette's home on May 22, 1989, the police found three grams of methamphetamine, a bottle of Inositol, a drug-cutting agent, a triple-beam scale, and records of her drug business.[3] After being read her rights, Juliette admitted to Special Agent Heideman that she distributed methamphetamine and that the records police found were of her drug business. Dass Allen and Douglas and Lou Ann Schoening bought drugs directly from Juliette, but they never heard her name her drug source or any partners.

While the government may prove its case by circumstantial evidence, it must prove Juliette entered into an agreement to distribute methamphetamine. The government's theory of the case was that Carper supplied drugs to the Starks to sell. Without speculating that Carper was Juliette's unnamed source in Missouri Valley, there is insufficient evidence of the nature of Carper's and Juliette's relationship. The evidence we have recited in detail here tends to prove Juliette Stark is guilty of a crime, but not conspiracy with Carper to distribute methamphetamine. We reverse her conviction.

### B.

■ Our decision to reverse Juliette Stark's conviction does not extend to Pamela Stark. Our review of the record in the light most favorable to the government indicates a reasonable jury could find Pamela Stark guilty beyond a reasonable doubt. We need not recite all the evidence against her, but emphasize the following: several people bought methamphetamine from her; her fingerprints were found on a notebook containing Carper's drug notes; her drug notes contained Carper's initials; and some figures in her drug notes were identical to figures in Carper's notes. We reject her argument that the jury should not have believed Dass Allen's testimony.

---

**3.** Contrary to the government's assertion in its brief, Exhibits 1I, 1L, and 1M—Juliette's drug records—do not contain Carper's initials.

The jury knew the government granted Allen immunity, that he had beaten Pamela Stark, and that he was currently attempting to get custody of his and Pamela's child. Despite this information, the jury apparently chose to believe him, and that was its right. We affirm Pamela Stark's conviction.

██ Pamela Stark's second claim on appeal is that the District Court miscalculated her base offense level under the Sentencing Guidelines. (Juliette's appeal on this issue is now moot.) She claims the District Court clearly erred by attributing to her not only the methamphetamine found in her home at the time of her arrest, but also the amount of methamphetamine sales reflected in her drug records.[4] She claims these calculations are faulty for at least two reasons: the government failed to prove the records were notes of drug sales; and, even assuming that some of the records reflect drug sales, not all of the numbers in the notes should be attributed to her as drug sales. We reject these arguments.

The District Court did not clearly err in adding the drug sales reflected in the notes to Pamela Stark's base offense level. Under the Sentencing Guidelines, where "the amount [of drugs] seized does not reflect the scale of the offense, the sentencing judge shall approximate the quantity of the controlled substance." Application Note 2 to U.S.S.G. § 2D1.4. One way of estimating the drug quantities is by using "financial or other records." *Id.*

At sentencing, the government relied on the evidence produced at trial to prove that records seized from Pamela Stark's house were of her drug business. Dass Allen testified that when he purchased methamphetamine from Pamela on credit she would write his name down and the amount he owed her. He recognized his name as well as the name of several other individu-

als in her notes. In addition to Allen, Sergeant William Agnew of the Omaha Police Department gave his expert opinion that Pamela Stark's notes were drug records. On the basis of this evidence, the government proved by a preponderance of the evidence that Pamela Stark's notes were records of drug transactions.

As for individual figures challenged by Pamela Stark, we think it was reasonable for the District Court to infer that all the figures in the notes reflected drug sales. Dass Allen testified that the figures in the notes reflected amounts owed to Pamela for drugs she already distributed. Accordingly, the District Court did not clearly err in counting both the drugs reflected in the notes and the drugs found in the house. Moreover, it was reasonable to infer that the notes represent transactions occurring during the course of the conspiracy, particularly since they were admitted as evidence of the conspiracy at trial. Pamela Stark's sentence is affirmed.

We reverse the conviction of Juliette Stark, and remand case No. 90–3078SI to the District Court with instructions to enter a judgment of acquittal. We affirm the judgments of the District Court with respect to Michael Carper and Pamela Stark, in case Nos. 90–3077SI and 90–3079SI.

It is so ordered.

---

4. Police found 22.1 grams of methamphetamine and notes with transactions totalling $113,000 in Pamela Stark's home. The probation officer divided $113,000 by $2,000 (the government's estimate of the cost of an ounce of methamphetamine) to determine the number of ounces of methamphetamine reflected in the notes. The officer converted the ounces to grams and added the total to the 22.1 grams found in the home to arrive at a figure of 1.623 kilograms of methamphetamine attributable to Pamela Stark. The District Court attributed the entire 1.623 kilograms of methamphetamine to her, resulting in a base offense level of 32.