950 F.2d 508
 UNITED STATES of America, Appellee,
v.
Thomas Edward WATTS, Appellant.
UNITED STATES of America, Appellee,
v.
David Henry RITCHERSON, Appellant.
UNITED STATES of America, Appellee,
v.
Mary Catherine RITCHERSON f/k/a Mary Catherine Luter, Appellant.
 Nos. 90-2407, 90-2409 and 90-2439.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 16, 1991.
Decided Oct. 31, 1991.
Rehearing and Rehearing En Banc Denied Dec. 9, 1991.
 
 Daniel Jacobi, Des Moines, Iowa, argued (Paul H. Rosenberg, on brief), for appellant Mary Ritcherson.
 Lylea Dodson Critelli, Des Moines, Iowa, argued, for appellant David Ritcherson.
 Mark Godwin, Des Moines, Iowa, argued, for appellant Thomas Watts.
 Robert C. Dopf, Des Moines, Iowa, argued, for appellee.
 Before FAGG, Circuit Judge, HENLEY, Senior Circuit Judge, and MAGILL, Circuit Judge.
 HENLEY, Senior Circuit Judge.
 
 
 1
 Appellants challenge their convictions and sentences associated with an alleged drug distribution conspiracy in Des Moines, Iowa between 1985 and 1989. All appellants were convicted under 21 U.S.C. § 846 for a single conspiracy to distribute heroin, a Schedule I controlled substance, and cocaine and cocaine base, Schedule II controlled substances, in violation of 21 U.S.C. § 841(a)(1). Mary Catherine Luter Ritcherson (Luter[1]) was sentenced to 360 months in prison and a $20,000.00 fine. David Henry Ritcherson (Ritcherson) was sentenced to 188 months in prison and five years of supervised release. Thomas Edward Watts (Watts) was sentenced to 160 months in prison but was acquitted of a second count of the indictment for which only he was charged. Codefendant Charles Ray Cofer (Cofer) was acquitted of the conspiracy charge.
 
 
 2
 Appellants raise several alleged points of error. The points challenging the convictions principally focus on the proof of a conspiracy and evidentiary issues. The points challenging sentencing focus on the conversion of certain cash and assets to drug equivalents and increases in criminal history scores due to alleged prior offenses. We affirm all convictions and sentences.
 
 FACTS
 
 3
 The indictment on which the appellants were charged and convicted states:
 
 
 4
 That on or about the 1st day of January, 1985 and continuously thereafter up to and including the 1st day of January, 1990, in the Southern District of Iowa and elsewhere, DAVID HENRY RITCHERSON, MARY CATHERINE LUTER, a/k/a MARY RITCHERSON, THOMAS EDWARD WATTS and CHARLES RAY COFER willfully and knowingly did combine, conspire, confederate and agree together with diverse persons known and unknown to the Grand Jury to commit an offense against the United States, namely to knowingly and intentionally distribute heroin, a Schedule I controlled substance, cocaine and cocaine base, a Schedule II controlled substance in violation of Title 21, United States Code, Section 841(a)(1) ... a violation of Title 21, United States Code, Section 846.
 
 
 5
 The government's theory of the case is that Luter was the center of a drug trafficking conspiracy involving the possession and distribution of heroin and cocaine by several different people beginning in 1985 and going through 1989. Ritcherson and Watts allegedly joined the ongoing conspiracy in 1988.
 
 
 6
 In cases raising sufficiency of the evidence, we are required to view the evidence in the light most favorable to the government to determine whether a rational jury could have found defendants guilty beyond a reasonable doubt. United States v. Kindle, 925 F.2d 272 (8th Cir.1991). Thus, our summary of facts here largely mirrors the government's statement of facts on appeal.
 
 
 7
 Luter was engaged in the sale of heroin as early as 1985. She obtained the drugs and sold them to local dealers in Iowa. She supplied several different dealers and sought out others to sell drugs for her. In 1988 Luter met Ritcherson who had come to Iowa from California to sell drugs for another dealer, Ricco Winfrey. In May 1988 Luter and Ritcherson were married and Watts joined the conspiracy. On June 1, 1988 Ritcherson and his sister were driving Luter's Jaguar when they were lawfully stopped by the police. Crack cocaine was found on Ritcherson's sister and something over $300.00 cash was found in Ritcherson's sock.
 
 
 8
 On August 4, 1988, acting on an informant's tip, law enforcement officers observed Ritcherson and Watts arrive on a flight from Los Angeles and then proceed to Luter's house. Others were seen leaving and entering the residence shortly before a search warrant was obtained. During the search, drug trafficking activity records, photographs of Watts and Ritcherson together, and an electronic paging device (beeper) were seized. Four motorscooters purchased in July of 1988 and allegedly used for drug transportation and distribution were also discovered in the garage. During inventory the beeper was activated and, upon returning the call and tracing the displayed number, law enforcement officers determined that Watts had placed the call from an apartment leased in the name of Cofer.
 
 
 9
 That same day, during a warrant search of the Cofer apartment, officers discovered Watts therein, as well as $4,405.00 in cash, ziplock bags, another beeper traced to Ritcherson (purchased in February 1988), and two grams of crack residue. Witnesses testified that after officers entered the apartment, Watts stated he figured "you guys would be coming but you're too late. I already moved the stuff."
 
 
 10
 On November 5, 1988 Watts and Ritcherson were stopped by narcotics officers in the Los Angeles airport. They were travelling under fictitious names and Ritcherson was carrying $18,229.00. A few months later on March 30, 1989 Natasha Douglas was stopped in the Des Moines airport with a bag containing 179.92 grams of crack which she claims Watts placed in the bag and instructed her to carry from Los Angeles to Des Moines. Also found in the bag were various personal items belonging to Watts.
 
 
 11
 At trial the government presented twenty-one witnesses, many of whom testified to activities occurring before Watts and Ritcherson allegedly joined the conspiracy. Also presented was testimony by officers and others regarding their observations of the defendants together and their drug activities. The real evidence included: pictures showing Watts and Ritcherson together with guns and money; records of bank deposits and drug transactions; and receipts proving ownership and purchase dates for the beepers, motorscooters, and Luter's automobile.
 
 
 12
 At sentencing, the government presented evidence of money and property that it alleged were associated with the same course of conduct as the drug conspiracy activities of the appellants. The money and property attributed to Watts and Ritcherson included $350.00 seized from Ritcherson in June 1988, the $8,000.00 value of the motorscooters found during the raid of the Luter home, the $4,405.00 seized from the Cofer apartment, and the $18,229.00 seized from Ritcherson at the Los Angeles airport in November 1988. Using a $100.00 per gram street value for crack, the seized property was converted to 309.84 grams of cocaine base. Also, the two grams of crack residue found in Cofer's apartment were added, bringing the total to 311.84 grams, resulting in a level 34 base offense determination. Ritcherson's sentence was increased based on a juvenile offense for which he was incarcerated for over three years and from which he had been on parole less than two years. Luter was sentenced based on other assets, but she received the same base offense level determination. Her sentence was further increased by prior convictions.
 
 CONSPIRACY AND JURY INSTRUCTION ISSUES
 
 13
 Appellants complain of a variance between the single conspiracy alleged in the indictment and the alleged evidence of a multiple conspiracy, the inadequacy of the multi-conspiracy jury instruction, insufficiency of the evidence, the admission of prejudicial evidence of uncharged and unalleged coconspirators and acts, error in the instructions on compartmentalization of evidence, and prejudicial admission of certain other testimony and photographs.
 
 
 14
 A conspiracy ordinarily consists of two or more persons in an agreement to commit an offense plus an act in furtherance of the conspiracy. United States v. Zimmerman, 832 F.2d 454, 457 (8th Cir.1987). A single conspiracy consists of individuals sharing common purposes or objectives under one general agreement. United States v. Davis, 882 F.2d 1334, 1340 (8th Cir.1989), cert. denied, 494 U.S. 1027, 110 S.Ct. 1472, 108 L.Ed.2d 610 (1990). Evidence of changes in participants or their roles, rather than suggesting a new conspiracy, often suggests only the various phases of one basic, overriding plan. Id. One conspirator does not have to be aware of the existence of all other conspirators or all the details of the conspiracy, as long as the evidence shows s/he made a knowing act in furtherance of the conspiracy. United States v. Alexander, 943 F.2d 825, 829-830 (8th Cir.1991); Zimmerman, 832 F.2d at 458. This evidence may include that of a shared common aim or purpose, or of mutual dependence and assistance. Alexander, 943 F.2d at 829-830. Against the backdrop of these case authorities, we now consider appellants' contentions.
 
 1. Conspiracy Issues
 
 15
 The appellants allege that there was a fatal variance between the indictment and the evidence, and that the court should have given multiple conspiracy jury instructions. The issue of whether a single or multiple conspiracy exists is one for the jury. Id.; Zimmerman, 832 F.2d at 457. The district court handled the question through one "all or nothing" instruction. Instruction No. 18 directed the jury to determine whether the single conspiracy alleged in the indictment existed and to determine who were its members. The jury was instructed that if it found more than one conspiracy, it must first determine if any one of the conspiracies was the charged conspiracy and then determine the members of that conspiracy. Thus, the jury did not have the option of convicting each appellant on a different conspiracy (which might well have created a variance with the indictment), but was instructed to find only one particular conspiracy and determine its members. Considering the aforementioned conspiracy cases and viewing the evidence we summarized in the light most favorable to the government, we believe there is substantial evidence to support the jury finding of at least one conspiracy, involving all three appellants, beyond a reasonable doubt.
 
 
 16
 If there was more than one conspiracy, appellant Luter has little to complain about since she was evidently the central figure in all of them. Zimmerman, 832 F.2d at 457 n. 2. As for Watts and Ritcherson, the evidence of their activities in 1988 and continuing into 1989 were enough for the jury to connect them to the conspiracy involving Luter. We conclude that any variance that may have occurred did not substantially affect or prejudice their convictions. See United States v. Jackson, 696 F.2d 578 (8th Cir.1982) (harmless error), cert. denied, 460 U.S. 1073, 103 S.Ct. 1531, 75 L.Ed.2d 952 (1983).
 
 
 17
 The facts here are distinguishable from those in two of our court's more recent opinions where we reversed conspiracy convictions due to an absence of evidence connecting individuals to any conspiracy. See United States v. Carper, 942 F.2d 1298 (8th Cir.1991) (defendant not guilty by association where no evidence connected her to drug conspiracy); and United States v. Cox, 942 F.2d 1282 (8th Cir.1991) (evidence of a defendant's possession with intent to distribute insufficient to connect defendant to a conspiracy with same purpose). At some point, each appellant in the present case was connected to drug conspiracy activity and to each other appellant.
 
 2. Prejudicial Evidence
 
 18
 Appellants complain that prejudicial testimony was admitted involving activities unrelated to their individual involvement in the conspiracy and that related jury instructions were inadequate. In Instruction No. 7, the court directed the jury to focus on the evidence relevant to each individual defendant regarding each individual charge. It also gave examples and emphasized the importance of an individualized guilt determination. We see no reversible error in this instruction.
 
 
 19
 In some instances, counsel failed to object at trial to allegedly prejudicial errors and evidentiary admissions pointed to now, thus waiving such alleged errors. For those items to which objections were made, appellants variously contend that certain testimony should have been limited in its use at the time through a limiting instruction or excluded altogether. We cannot say the district court abused its discretion or that prejudice resulted from admitting this evidence and refusing limiting instructions since the evidence could easily be compartmentalized by the jury with respect to each defendant.
 
 
 20
 Because Luter was the central figure in the conspiracy(ies), we see no merit in her objections to the admission of evidence of drug activities with conspirators other than Watts and Ritcherson once it is decided there was at least one conspiracy involving all three appellants. If there was only one conspiracy, all evidence was relevant to her ongoing involvement in it. If there were multiple conspiracies of which appellants' conspiracy was one, much of the pre-1988 evidence is necessary background and foundation.
 
 
 21
 Watts and Ritcherson claim that a substantial amount of testimony at trial focussed on activities prior to 1988. We do not believe, however, that the jury was persuaded to use this in a prejudicial manner against them. See United States v. Baker, 855 F.2d 1353, 1357-58 (8th Cir.1988) (harmless error where jury could easily separate and apply the evidence to the proper defendants, other defendants not implicated, and evidence connected defendants to the conspiracy), cert. denied, 490 U.S. 1069, 109 S.Ct. 2072, 104 L.Ed.2d 636 (1989). The pre-1988 evidence did not implicate the case against Ritcherson or Watts except to the extent it convinced the jury Luter was a drug dealer with whom they dealt.
 
 
 22
 The evidence connecting Ritcherson and Watts to Luter and the conspiracy beginning in 1988 was easy enough for the jury to compartmentalize. The jury demonstrated that it could do just that by acquitting Cofer and acquitting Watts of a separate charge. See United States v. Jones, 875 F.2d 674, 675 (8th Cir.) (per curiam) (acquittal of some defendants of a multi-count, multi-defendant indictment demonstrates the jury was able to compartmentalize the evidence of various charges against various defendants), cert. denied, 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989). The same can be said for testimony about events after 1987 that related to one particular defendant but not others.
 
 
 23
 Finally, appellants complain that admission of a photograph seized from Luter's home showing Watts and Ritcherson together with cash and weapons was unduly prejudicial. In the context of all the other evidence, including appellants' association, the large sums of cash found at other times, and law enforcement officer testimony regarding other weapons, vehicles and the like associated with this and, in general, other drug activities, we cannot say that the district court abused its discretion by admitting the photograph. See United States v. Helmel, 769 F.2d 1306 (8th Cir.1985).
 
 SENTENCING
 
 24
 All appellants challenge the method by which certain assets were converted to crack cocaine for purposes of determining their base offense level for sentencing. Luter individually argues that there was insufficient evidence of certain alleged prior offenses. Ritcherson individually argues that a juvenile offense was improperly used to increase his sentence. Both Ritcherson and Watts argue that certain assets should not have been attributed to them for conversion into drugs for sentencing. We will affirm a criminal sentence so long as the district court's findings of fact are not clearly erroneous and its findings have been properly applied to the Guidelines as a matter of law. United States v. Holland, 884 F.2d 354, 358 (8th Cir.), cert. denied, 493 U.S. 997, 110 S.Ct. 552, 107 L.Ed.2d 549 (1989).
 
 1. Crack Conversion
 
 25
 We first observe that in a conspiracy, a coconspirator's unlawful drugs may be attributed to other coconspirator defendants. Id. Also, the United States Sentencing Commission's Guidelines Manual (U.S.S.G.) requires the conversion of certain assets associated with drug activity into quantities of drug. See United States v. Gerante, 891 F.2d 364, 368-69 (1st Cir.1989); U.S.S.G. §§ 1B1.3(a)(2), 2D1.1, .4, 3D1.2(d) (and related commentary). The issues that have been left to the courts are the determination of what numerator (assets to be converted) and denominator (drug unit value) are to be used. It appears that sufficient evidence connects the appellants and the activities of the conspiracy in time and proximity to the cash and assets converted into drug equivalents. Therefore, we only discuss the latter issue.
 
 
 26
 The government used a $100.00 per gram street value of crack cocaine to convert cash and assets to grams of crack. Appellants point out, however, that the indictment alleges a conspiracy involving heroin, cocaine and crack cocaine. Appellants also point to the government's evidence in the record of each type of drug. The parties seem to agree that the per gram price for these various drugs ranges from $100.00 to $400.00 per gram. The government argues that there was only evidence of crack cocaine with regard to the activities among the appellants and thus its conversion value was properly used.
 
 
 27
 We agree that the record contains testimony regarding the existence of all three drugs. The government has steadfastly contended that there was only one ongoing conspiracy involving three drugs and that Luter was at the center. There was only evidence of crack cocaine, however, in the Cofer apartment, in Ritcherson's sister's possession, and in Douglas's bag at the airport. These events constitute the principal evidence of drug activities among the appellants. No evidence of any other drug was introduced in connection with Watts or Ritcherson. Although there was evidence showing that Luter was involved with other drugs besides crack cocaine before Watts and Ritcherson came on the scene, there appears to us no significant factual question whether the appellants dealt with anything other than crack cocaine from that point on.[2] Thus, this case appears distinguishable from United States v. Owens, 904 F.2d 411 (8th Cir.1990).
 
 
 28
 In Owens the defendants were charged with conspiring to distribute methamphetamine or amphetamine. Witnesses testified to different facts, lab tests showed amphetamine, and the probation officer recommended sentencing based on methamphetamine (which yielded the most stringent sentence). Our court held that where evidence at trial is not clear as to which of two alternative drugs were involved in a multi-drug conspiracy, a special verdict form is required or else the sentencing court must use the relevant drug conversion which yields the most favorable sentencing result for the defendants. Id. at 414. In the present case the indictment was an "and," not an "or," indictment. The jury did not need to decide between the different drugs. Evidence of all three drugs was introduced but the conversion was based on transactions occurring during a specific period of time. The evidence of crack distribution during the relevant time period was not contradicted or unclear. In contrast to Owens, the court in this case did not elicit an ambiguous or unclear verdict from the jury.
 
 2. Other Enhancements
 
 29
 Luter separately argues that certain alleged prior offenses were not adequately substantiated in the sentencing report or at the sentencing hearing and thus were improperly relied upon to increase her criminal history level. We do find some evidence of prior offenses in the record and the district court apparently concluded the evidence submitted was sufficient. Luter's assertion that use of the prior offenses in preparing the sentencing report and recommendation was improper is ambiguous and innocuous. Her assertion is therefore insufficient to raise specific questions about the accuracy of the report or the effect of the information on the outcome of the sentencing. United States v. Petty, 798 F.2d 1157, 1162 (8th Cir.1986), remanded on other grounds, 481 U.S. 1034, 107 S.Ct. 1968, 95 L.Ed.2d 810 (1987).
 
 
 30
 Ritcherson separately argues that a prior juvenile offense was improperly used to increase his criminal history score by five points. The prior offense involved incarceration for three years and appellant had been on parole for less than two years at the time of the current offense. This resulted in a two and three-point addition, respectively, to his criminal history score. See United States v. White, 888 F.2d 1252, 1254 (8th Cir.1989). Ritcherson argues that the district court should have exercised its discretion and not considered the prior offense due to certain inequities associated with the juvenile sentence.
 
 
 31
 Allegedly, Ritcherson was incarcerated for a longer period as a juvenile than he would have been for committing the same offense as an adult. He could not be put on parole until he was released from juvenile incarceration. Ritcherson claims the guidelines are unfair as applied in his case because he would not have served as long as an adult and would have been off parole, and more than two years from incarceration, at the time the subject offense occurred. This may have avoided any additions to his criminal history score.
 
 
 32
 All we have to go on is Ritcherson's speculation about how long he would have served had he been convicted as an adult and that evidence suggests it would probably have been long enough to result in the two point addition anyway. As to the alleged unfair effect of delayed parole, it seems to us that at least one purpose of adding points for commission of an offense while on parole or shortly after being released from incarceration is to differentiate between those who happen to have a prior offense and those who have a habit of prior offenses or quickly resume criminal activity after release. Ritcherson's circumstances do not present any compelling basis that would merit a departure and the district court did not abuse its discretion in refusing to so depart.
 
 
 33
 Based on the foregoing analysis, the convictions and sentences are affirmed.
 
 
 
 [1]
 Mrs. Ritcherson married her alleged coconspirator and appellant David Henry Ritcherson after the alleged conspiracy began. To avoid confusion, we refer to her by her maiden name
 
 
 [2]
 We note that the same assets were converted to arrive at the sentences of Watts and Ritcherson, but that somewhat different assets arising at a different time were chosen for sentencing Luter. Under the one conspiracy theory, it appears Luter's sentence could have been based on the same converted assets as were the sentences of Watts and Ritcherson and apparently with similar results. Thus, any argument suggesting that the assets used to sentence Luter may have been connected with a different drug is without merit since any error would appear harmless