986 F.2d 503
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that they are not precedent and generally should not be cited unless relevant to establishing the doctrines of res judicata, collateral estoppel, the law of the case, or if the opinion has persuasive value on a material issue and no published opinion would serve as well.
UNITED STATES of AMERICA, Appellee,
v.
Jody WILSON, Appellant.
UNITED STATES of AMERICA, Appellee,
v.
Robert J. JOHNSON, Appellant.
UNITED STATES of AMERICA, Appellee,
v.
Dennis SHILENY, Appellant.
 Nos. 92-1691, 92-1744, 92-1878.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: October 14, 1992.
Filed: January 5, 1993.
 
 Before FAGG and BOWMAN, Circuit Judges, and LARSON,* Senior District Judge.
 PER CURIAM.
 
 
 1
 Jody Wilson, Dennis Shileny, and Robert J. Johnson appeal their jury convictions for conspiracy to distribute and possess with intent to distribute cocaine between 1981 and February 21, 1991. See 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846 (1988). Shileny also appeals his fifty-one month sentence. We affirm.
 
 
 2
 At trial, the Government alleged Darwin Slaikeu was the "common denominator" in the conspiracy. Darwin, who moved from Iowa to Texas in 1982, would bring cocaine with him when he returned to visit his family in Iowa. Darwin sold some of the cocaine directly to others and left some with his brother, David Slaikeu, who would use and sell the rest. The Government asserted that although they may have had other sources, Wilson, Shileny, and Johnson bought cocaine from the Slaikeus and then resold some of it to others.
 
 
 3
 Testifying for the Government, David said Darwin told him he had sold cocaine to Johnson, Shileny, Merle Cook, Rick Petz, and Gary Shearer. David added that Darwin might have sold cocaine to Wilson because Darwin stated he had been to Shearer's house when Wilson was there and "they had bought cocaine." On cross-examination, however, David stated that as far as he knew, Darwin never sold or transferred cocaine to Wilson. David testified that he had sold cocaine to Wilson once. On the night of August 12, 13, 19, or 20, 1988, Wilson and some friends came to David's house to buy a half ounce of cocaine. Wilson paid for the cocaine a day or two later. According to David, he also sold cocaine to Shileny, who told David he was going to sell it to a coworker. David also stated he sold cocaine to Johnson, and bought drugs from Johnson and Cook.
 
 
 4
 Darwin Slaikeu also testified for the Government. He testified that he had never sold cocaine to Wilson. Darwin stated that between 1981 and 1982, he sold cocaine to Johnson in amounts up to an eighth of an ounce. According to Darwin, he did not sell any drugs to Shileny during this time. Darwin moved to Texas in 1982 and quit obtaining cocaine. In 1985, one of Darwin's old suppliers brought him a half kilo of cocaine in Texas. Darwin testified he broke the half up and began bringing it back to Iowa in amounts ranging from one to four ounces. Darwin testified he sold some of the cocaine to Cook, but gave most of it to David.
 
 
 5
 Government witness Royce Moore testified he sold cocaine to others, including Cook. In December 1987, Wilson approached Moore and asked him whether he wanted to purchase cocaine that a friend had "got stuck with." Moore purchased an eighth of an ounce for personal use. In January 1988, Moore purchased an ounce, and over the next five months, Moore purchased a total of two ounces from Wilson. Moore stated he obtained an ounce of cocaine from Wilson on August 10, 1988, and sold it to Cook. Moore testified that he had believed one of the Slaikeus was Wilson's supplier until Wilson told him his supplier was Shearer.
 
 
 6
 The Government alleged that on August 10, 1988, Wilson sold cocaine to Royce Moore, who sold it to Merle Cook. The Government attempted to prove circumstantially that Wilson obtained the cocaine from the Slaikeus on August 6, 1988. According to the Slaikeus' testimony, Darwin brought four ounces of cocaine to Iowa and sold two ounces of it to Merle Cook in a hotel room on Saturday August 6. The cocaine sold to Cook had a purity level of 55%. Wilson and his wife arrived at the hotel room later to drink beer and use cocaine with Darwin, David, and David's wife. Darwin provided the cocaine. Because Wilson had sold 54% pure cocaine to Moore on Wednesday August 10, the Government theorized that Wilson obtained the cocaine from Darwin at the hotel. Both Slaikeus, however, testified that David left with the two remaining ounces and that Wilson did not obtain any cocaine. The Slaikeus also testified that Wilson did not know about Darwin's transaction with Cook and was not involved.
 
 
 7
 Wilson contends the evidence is insufficient to support his conviction. In reviewing this contention, we assess the evidence in the light most favorable to the Government and give the Government the benefit of all reasonable inferences that may logically be drawn from the evidence. United States v. Fuller, 942 F.2d 454, 458 (8th Cir.), cert. denied, 112 S. Ct. 315 (1991), and cert. denied, 112 S. Ct. 890 (1992). We reverse only if a reasonable jury must have had a reasonable doubt about the existence of some element of conspiracy. Id.
 
 
 8
 To convict a person of conspiracy to distribute cocaine, the Government must show the person entered into an agreement to distribute cocaine. See United States v. Carper, 942 F.2d 1298, 1302 (8th Cir.), cert. denied, 112 S. Ct. 614 (1991). Mere association with conspirators, United States v. Ivey, 915 F.2d 380, 384 (8th Cir. 1990); United States v. Torres, 901 F.2d 205, 220 (2d Cir.), cert. denied, 111 S. Ct. 273 (1990), or purchasing drugs from or selling drugs to a conspirator, United States v. Canino, 949 F.2d 928, 941 (7th Cir. 1991); United States v. Prieskorn, 658 F.2d 631, 633 (8th Cir. 1981), does not establish participation in a conspiracy. If a person buys from a conspirator for resale and knows the conspiracy's general goals, however, that person is a member of the conspiracy. United States v. Marks, 816 F.2d 1207, 1212 (7th Cir. 1987). Once the Government proves a conspiracy exists, slight evidence linking a person to the conspiracy is sufficient. United States v. Turner, 975 F.2d 490, 494-95 (8th Cir. 1992); United States v. Nunn, 940 F.2d 1128, 1132 (8th Cir. 1991).
 
 
 9
 The Government's case against Wilson was based on David Slaikeu's testimony that Wilson purchased a half ounce of cocaine from him on either August 12, 13, 19, or 20, 1988, Royce Moore's testimony that Wilson sold him small quantities of cocaine between December 1987 and June 1988 and an ounce of cocaine on August 10, 1988, and the similarity in purity between the cocaine Wilson sold to Moore on August 10 and the cocaine Darwin Slaikeu sold to Merle Cook on August 6.
 
 
 10
 Wilson contends Royce Moore's testimony is inherently unbelievable. During Moore's direct and cross-examination, the jury learned that Moore's plea agreement with the Government required him to testify, he had abused drugs, and he would lie to stay out of prison. Nevertheless, his testimony was not unbelievable on its face. See United States v. Lozoya-Morales, 931 F.2d 1216, 1218 (7th Cir. 1991). Although most of Moore's testimony was uncorroborated, law enforcement officers corroborated Wilson's sale to Moore on August 10. We conclude the jury was entitled to evaluate Moore's credibility. See United States v. England, 966 F.2d 403, 406 (8th Cir.), cert. denied, 61 U.S.L.W. 3418 (Dec. 7, 1992) (No. 92-6400); Fuller, 942 F.2d at 458; Carper, 942 F.2d at 1302-03.
 
 
 11
 According to Wilson, the evidence showed only a buyer-seller relationship between himself and David Slaikeu and the half ounce he purchased from David Slaikeu was for personal use rather than resale. Wilson also contends the Government presented no evidence that he knew of the conspiracy's general purpose and scope. We disagree with both contentions.
 
 
 12
 In our view, a reasonable jury could infer that Wilson (1) bought the half ounce of cocaine from David Slaikeu for resale to some unknown buyer or obtained the cocaine he sold to Moore from the Slaikeus, and (2) knew of the conspiracy's goal. See United States v. Brown, 946 F.2d 58, 61 (8th Cir. 1991). We believe more than slight evidence connects Wilson to the conspiracy. David Slaikeu fronted Wilson a half ounce of cocaine and Wilson and the Slaikeus sold cocaine to Moore on separate occasions. Wilson also used cocaine with the Slaikeus.
 
 
 13
 Like Wilson, Johnson contends the evidence is insufficient to support his conspiracy conviction. We reject Johnson's contention. Darwin Slaikeu admitted he had sold cocaine to Johnson and that Johnson was one of his regular customers. Moore testified Johnson sold him cocaine, and Cook testified Johnson fronted cocaine to him monthly or every other month from 1981 to 1984 in amounts ranging from an eighth to a quarter ounce. Cook testified he sold the drugs, then used the money from the sales to pay Johnson. Cook also testified Johnson stated he obtained the drugs from Shileny. Cook also testified he sold cocaine, in amounts of an eighth of an ounce, to Johnson from 1985 to 1987. According to Cook, Johnson also told him he obtained cocaine from Darwin Slaikeu between 1985 and 1987. Having viewed the evidence in the light most favorable to the Government, we conclude the evidence supports Johnson's conspiracy conviction.
 
 
 14
 Johnson and Shileny contend the district court abused its discretion in denying their motions for a new trial based on their assertions that government witnesses lacked credibility. We must affirm the district court's denial of a new trial motion unless the district court clearly and manifestly abused its discretion. United States v. Brown, 956 F.2d 782, 786 (8th Cir. 1992). When considering a new trial motion, the district court may weigh the evidence and evaluate witness credibility. Id. The district court should grant a new trial only when " 'the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred.' " Id. (quoting United States v. Lanier, 838 F.2d 281, 284-85 (8th Cir. 1988)).
 
 
 15
 Most of the government witnesses were involved in illegal activities and testified in exchange for leniency, but their testimony is not so suspicious that the district court abused its discretion in concluding no miscarriage of justice may have occurred. Shileny specifically challenges the credibility of Cook's testimony. The district court found part of Cook's testimony about Mary Shileny was incredible, but found some of Cook's testimony about certain drug transactions involving Dennis Shileny was credible. Although Cook's testimony was uncorroborated, the district court did not abuse its discretion in believing some of it. We thus conclude the district court did not clearly and manifestly abuse its discretion in denying Johnson's and Shileny's new trial motions.
 
 
 16
 Shileny also contends government witness Lonson Luloff's testimony about drug transactions with Shileny between 1981 and 1983 should not have been admitted at trial or sentencing for two reasons. We reject them both.
 
 
 17
 First, Shileny asserts that rather than a single conspiracy, the government proved two conspiracies-one between Shileny and Luloff between 1981 and 1983 and another between Shileny and the other defendants from 1986 to 1988. The question whether evidence proved a single conspiracy or multiple conspiracies is one of fact for the jury. United States v. Holt, 969 F.2d 685, 687 (8th Cir. 1992); England, 966 F.2d at 406. We reverse the jury's finding of a single conspiracy only if the record does not "contain[ ] evidence from which the jury could find one overall agreement to commit an illegal act." United States v. Regan, 940 F.2d 1134, 1135 (8th Cir. 1991).
 
 
 18
 Viewing the evidence in the light most favorable to the verdict, we conclude the jury reasonably found a single conspiracy existed. See Holt, 969 F.2d at 687. The district court correctly instructed the jury on the distinction between a single conspiracy and multiple conspiracies. Contrary to Shileny's contention, a single conspiracy may be found even though not all the coconspirators know one another and the role and function of the coconspirators change over the conspiracy's course. United States v. Watts, 950 F.2d 508, 512 (8th Cir. 1991), cert. denied, 112 S. Ct. 1276, and cert. denied, 112 S. Ct. 1493, and cert. denied, 112 S. Ct. 1498 (1992). Evidence indicated the conspirators had a common overall goal-to distribute cocaine. Because the jury reasonably found a single conspiracy, the district court properly included an estimate of the amounts of cocaine and marijuana Shileny purchased from Luloff as relevant conduct under U.S.S.G. § 1B1.3.
 
 
 19
 Second, Shileny asserts no evidence about transactions between 1981 and 1983 should have been admitted at trial or sentencing because the statute of limitations governing the 1981-83 conspiracy had passed at the time of indictment. See 18 U.S.C. § 3282 (1988) (person cannot be prosecuted for noncapital offense unless indicted within five years after committing offense). The statute of limitations for conspiracy begins to run when the conspiracy ends: the date the conspiracy's objectives are accomplished or abandoned. United States v. Dynalectric Co., 859 F.2d 1559, 1563-64 (11th Cir. 1988), cert. denied, 490 U.S. 1006 (1989). The indictment in this case was returned on February 21, 1991. The evidence showed the conspiracy continued after February 21, 1986. David Slaikeu testified that Darwin brought cocaine from Texas to Iowa in July 1989. There was also evidence that Shileny bought and sold cocaine after February 21, 1986. Thus, Shileny was indicted less than five years after the conspiracy ended.
 
 
 20
 Shileny also asserts the district court erroneously included drug amounts under the relevant conduct provision based on Merle Cook's testimony. Relying on Cook's testimony about his activities with Shileny, the district court included forty pounds of marijuana, 1.25 grams of methamphetamine, and 45.85 grams of cocaine. When calculating Shileny's sentence, the district court specifically assessed Cook's credibility. Although the district court disbelieved Cook's testimony about a conversation he had with Mary Shileny, the district court decided Cook's statements about drug activities with Shileny were credible. Thus, we conclude the district court did not commit clear error by including the drug quantities based on Cook's testimony.
 
 
 21
 Accordingly, we affirm.
 
 
 
 *
 The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation