# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3720

_____

United States of America,

        Appellee,

    v.

June Garcia,

        Appellant.

\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  District of South Dakota.
\*
\*
\*

_____

Submitted:  November 11, 2008
Filed:  June 30, 2009

_____

Before MELLOY, BOWMAN, and SMITH, Circuit Judges.

_____

BOWMAN, Circuit Judge.

In April 2007, June Garcia and seven other individuals were charged by indictment with conspiracy to distribute and possess with intent to distribute methamphetamine. See 21 U.S.C. §§ 841(a)(1), 846. Each of the seven individuals indicted with Garcia pleaded guilty, and several of them testified for the government at Garcia's trial. A jury found Garcia guilty. Garcia then filed a post-trial motion for judgment of acquittal and a motion for a new trial, both of which were based on Garcia's contention that the evidence was insufficient to support the jury's guilty

verdict. The District Court[1] denied Garcia's motions and sentenced her to fifty-seven months in prison. Garcia appeals and we affirm.

Garcia first argues that because there was insufficient evidence to support her conviction, the District Court erred in denying her motion for judgment of acquittal. We review de novo the court's denial of Garcia's motion, and in reviewing whether the evidence was sufficient to support her conviction, we consider the "evidence in the light most favorable to the government, resolv[e] evidentiary conflicts in favor of the government, and accept[] all reasonable inferences drawn from the evidence that support the jury's verdict." United States v. Winston, 456 F.3d 861, 866 (8th Cir. 2006) (citations to quoted cases omitted) (alterations added). To convict Garcia of the conspiracy charged in the indictment, the government was required to submit direct or circumstantial evidence sufficient to prove beyond a reasonable doubt that (1) there was an agreement to distribute methamphetamine, (2) Garcia knew of the agreement, and (3) she knowingly joined in the agreement. See id. If the evidence was sufficient to support Garcia's conspiracy conviction, the District Court did not err in denying Garcia's motion for judgment of acquittal.

Garcia concedes that a conspiracy to distribute methamphetamine existed, but she contends that the government did not present sufficient evidence to prove beyond a reasonable doubt that she was aware of and joined in that conspiracy. Reviewing the record in the light most favorable to the jury's verdict and giving that verdict the benefit of all reasonable inferences, we conclude that the government established sufficient facts to support Garcia's conspiracy conviction and thus that the District Court did not err in denying Garcia's motion for judgment of acquittal.

---

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

Jose Vasquez-Herrera, the indicted ringleader of the conspiracy and its chief methamphetamine supplier, testified that he made multiple trips to Colorado to procure methamphetamine for distribution in and around Wakpala, South Dakota. Vasquez-Herrera's co-conspirators in South Dakota—including Garcia—wired money to Colorado from a Western Union outlet in Wakpala to pay for the methamphetamine. Vasquez-Herrera then delivered the methamphetamine to South Dakota and distributed it in the Wakpala area with the help of various co-conspirators. Vasquez-Herrera acknowledged that during his time in Wakpala, he resided periodically in a trailer owned by Garcia and her husband Martin, a fellow conspirator. Vasquez-Herrera testified that he sold 3.5 grams of methamphetamine to Garcia and that he gave another 3.5 grams to Garcia because Garcia's husband was "helping us around." Tr. of Jury Trial at 47.

While Vasquez-Herrera was in Wakpala, he became romantically involved with Teira Vermillion, and he eventually moved into Vermillion's house. Vermillion, another indicted co-conspirator, testified that she was aware of Vasquez-Herrera's drug-distribution activities and that Vasquez-Herrera stored methamphetamine in their bedroom. Vermillion further testified that Garcia visited Vermillion's residence on at least seven occasions, each time asking to see Vasquez-Herrera for the purpose of buying methamphetamine. On several of these occasions, Garcia arrived at the residence with cash, accompanied Vasquez-Herrera to the bedroom for a short period, and then left the residence without the cash. Vermillion also testified that she purchased one-quarter-gram quantities of methamphetamine from Garcia on four separate occasions when Vasquez-Herrera's supply of the drug was temporarily exhausted. In addition, Vermillion testified that Vasquez-Herrera would occasionally "front" methamphetamine to Garcia.

Amber Long Chase testified that Garcia revealed to her that "Mexicans" were staying in Garcia's trailer and were "paying" for the lodging with methamphetamine instead of cash. Id. at 92, 93. Long Chase also testified that she purchased

methamphetamine from Garcia on two occasions, paying $100 for a one-half-gram quantity each time. Garcia gave Long Chase methamphetamine on five or six other occasions. In addition, Garcia asked Long Chase to act as a "middle man" in some of Garcia's drug transactions. Id. at 95. According to Long Chase, Garcia revealed that she had a supply of methamphetamine and asked Long Chase to notify her if a potential methamphetamine buyer asked Long Chase about obtaining the drug. Instead of asking Long Chase to send buyers directly to her, however, Garcia directed Long Chase to come to Garcia's house herself and get the methamphetamine "without sending anybody over to [Garcia's] house so there wouldn't be that much traffic." Id. at 94–95.

Evalee Crow, one of Garcia's daughters and an indicted co-conspirator, testified that on August 6, 2005, Garcia provided her with $1150 and instructed her to wire the money to Garcia's husband, who was in Colorado with Vasquez-Herrera and needed the money to pay for methamphetamine. George Miller, Garcia's brother and another indicted co-conspirator, testified that he wired money from South Dakota to Colorado to pay for methamphetamine that the conspirators later distributed in the Wakpala area. Miller further stated that Garcia informed him that she had also wired money from South Dakota to Colorado to pay for methamphetamine. Miller also testified that he saw Garcia provide one-gram or one-half-gram quantities of methamphetamine to two of her daughters on two or three separate occasions.

"[A] defendant may be convicted for even a minor role in a conspiracy, so long as the government proves beyond a reasonable doubt that he or she was a member of the conspiracy." United States v. Lopez, 443 F.3d 1026, 1030 (8th Cir.), cert. denied, 549 U.S. 898 (2006). Here, although Garcia may have played only a minor role, numerous co-conspirators testified to Garcia's involvement in the conspiracy to distribute methamphetamine. Based on the evidence recited above, the jury could reasonably conclude that Garcia knew of the conspiracy to distribute methamphetamine and intentionally joined it.

Garcia cites our decisions in <u>United States v. Carper</u>, 942 F.2d 1298 (8th Cir.), <u>cert. denied</u>, 502 U.S. 993 (1991), and <u>United States v. Cox</u>, 942 F.2d 1282 (8th Cir. 1991), <u>cert. denied</u>, 503 U.S. 921 (1992), in support of her argument that the evidence may have been sufficient to prove that she used and distributed methamphetamine but it was not sufficient to prove that she conspired with others to distribute methamphetamine. <u>Carper</u> and <u>Cox</u> are distinguishable. In <u>Carper</u>, we concluded that there was "evidence that [the defendants] associated, but there [was] not enough evidence linking [the] association to drugs." 942 F.2d at 1302. We reasoned that despite ample evidence that the defendants distributed methamphetamine individually, there was no evidence that they conspired to distribute methamphetamine. Likewise in <u>Cox</u>, we reversed a conspiracy conviction after concluding that there was "no evidence of group knowledge or agreement about plans for disposal of the cocaine at issue." 942 F.2d at 1285. In contrast, the government presented evidence in this case that Garcia wired funds to Vasquez-Herrera in Colorado to pay for methamphetamine; that Vasquez-Herrera fronted, sold, and paid rent in methamphetamine to Garcia; that Garcia distributed methamphetamine to her daughters and others; and that she solicited Long Chase to act as a middle man in her distribution activities. A reasonable jury evaluating this evidence could find that Garcia was an actual participant in the methamphetamine-distribution conspiracy.

Garcia also argues that the co-conspirator testimony presented at trial was unreliable because those witnesses had significant personal incentives to cooperate with the government and testify against her. "It is axiomatic that we do not review questions involving the credibility of witnesses, but leave credibility questions to the jury." <u>United States v. Dabney</u>, 367 F.3d 1040, 1043 (8th Cir. 2004). Moreover, "[w]e have repeatedly upheld jury verdicts based solely on the testimony of co-conspirators." <u>United States v. Coleman</u>, 525 F.3d 665, 666 (8th Cir.), <u>cert. denied</u>, 129 S. Ct. 430 (2008). The co-conspirators who testified to Garcia's involvement in the conspiracy did so with the hope—not the promise—of a sentence reduction, but that did not render their testimony inherently unreliable. See <u>United States v. Baker</u>,

367 F.3d 790, 798 (8th Cir. 2004). The jury was aware of these potential conflicts and nevertheless credited the testimony of Garcia's co-conspirators. Because we will not second-guess credibility determinations made by the jury and because the co-conspirator testimony, if believed, coupled with the other evidence presented by the government, established Garcia's guilt beyond a reasonable doubt, we reject Garcia's arguments regarding the testimony of her co-conspirators.

Garcia argues in the alternative that the District Court erred by refusing to grant her motion for a new trial. A court may grant a motion for a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33. Although a district court has broad discretion to grant or deny a motion for a new trial based upon the weight of the evidence, and the court may "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict," United States v. Starr, 533 F.3d 985, 999 (8th Cir.) (citation to quoted case omitted), cert. denied, 129 S. Ct. 746 (2008), such discretion must be exercised "sparingly and with caution," United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir. 1980). Unless the court determines that a miscarriage of justice will otherwise occur, the jury's verdict must be allowed to stand. United States v. Lacey, 219 F.3d 779, 783 (8th Cir. 2000).

The District Court cited the appropriate standards and based on its independent evaluation of the evidence, determined that "the evidence [did] not preponderate against the verdict," "[t]he jury could easily have concluded from the evidence that the defendant committed the offense," and "[t]he interests of justice do not require a new trial." Ord. of October 26, 2007, at 4. We cannot say that the court abused its considerable discretion in denying Garcia's motion for a new trial.

Although this is a close case, we are satisfied that the evidence was sufficient to support Garcia's conspiracy conviction, and we affirm the judgment of the District Court.

_____