UNITED STATES of America, Appellee,

v.

**David Anthony HULETT, Appellant.**

No. 93–2219.

United States Court of Appeals,
Eighth Circuit.

Submitted March 18, 1994.

Decided April 7, 1994.

**780**

Douglas Peine, St. Paul, MN, argued, for appellant.

Christopher J. Bebel, Asst. U.S. Atty., R. Michael Waterman (legal intern), U.S. Attys. office for the Dist. of Minn., Minneapolis, MN, argued, for appellee.

Before MAGILL, Circuit Judge, HEANEY, Senior Circuit Judge, and HANSEN, Circuit Judge.

HEANEY, Senior Circuit Judge.

David Anthony Hulett was convicted of conspiracy to possess, and aiding and abetting an attempt to possess, with intent to distribute in excess of 500 grams of cocaine. 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii), 846. He was sentenced to ninety-seven months imprisonment on each count, to be served concurrently.

On appeal Hulett contends that (1) the district court erred in refusing to suppress items seized in a search of his residence, (2) he was entrapped as a matter of law, and (3) the district court erred in determining the length of his sentence by failing to properly account for the artificially low price set by the undercover agents in their reverse sting operation when calculating the quantity of cocaine involved in the reverse sting. We affirm on all issues.

### I.

Hulett first challenges the validity of the search of his residence. He contends that the affidavit submitted to the magistrate was insufficient to justify the search. Hulett concedes, as he must, that the affidavit was sufficient to show that he had been and was engaging in the distribution of cocaine. He argues, however, that at no time was there an allegation that anyone had ever participated in drug activity in Hulett's residence. The district court, however, stated:

> [T]he Court agrees with Magistrate Boline that a sufficient nexus was established. Few places are more convenient that one's residence for use in planning criminal activity and concealing fruits of a crime. *United States v. Green*, 634 F.2d 222, 226 (5th Cir.1981). In addition, the affidavit established that Becker placed a telephone call to a number assigned to Hulett's dwelling on October 7, 1992, immediately after discussing a proposed drug transaction with undercover officers.

*United States v. Hulett,* No. 3–92–119, slip. op. at 2, 1993 WL 661463 (D.Minn. Feb. 12, 1993).

■ We agree that there was a substantial basis for the magistrate to conclude that probable cause existed to search Hulett's home. *See United States v. Ellison,* 793 F.2d 942, 946 (8th Cir.) (quoting *Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983)), *cert. denied,* 479 U.S. 937, 107 S.Ct. 415, 93 L.Ed.2d 366 (1986); *see also United States v. Willis,* 967 F.2d 1220, 1224 (8th Cir.1992) (lawful arrest and seizure of pager and cash on a person provide probable cause for warrant to search person's residence). The record reveals that James Christian Becker, Hulett's co-conspirator, told BCA[1] Special Agent John Tyndall, who was working undercover in the reverse sting, that Becker's superior—who turned out to be Hulett—had the money needed to complete the purchase of four kilograms of cocaine from the agent. Becker called Hulett's home immediately after this conversation. When there was no response at Hulett's residence, Becker phoned Hulett's pager. Hulett returned Becker's call a short time later. Becker then telephoned the agent to tell him that Becker's superior was on his way over to Becker's house to discuss the proposed transaction. BCA surveillance personnel observed Hulett arrive at Becker's residence shortly thereafter. In light of the record, we agree with the district court that there was a fair probability that a search of Hulett's home would reveal records and notes essential to keeping track of the voluminous drug trafficking in which Hulett and Becker were engaged.

## II.

■ Hulett next makes two related arguments based on theories of entrapment. First, he challenges the conviction itself by asserting that he was entrapped as a matter of law. Entrapment as a matter of law exists where the evidence establishes that the government agent originated the criminal design, the agent implanted in the mind of an innocent person the disposition to commit the offense, and the defendant then committed the criminal act at the urging of the government agent. *United States v. Ford,* 918 F.2d 1343, 1347 (8th Cir.1990) (citations omitted). The critical inquiry is whether the government agent caused or induced the defendant to commit a crime he was not otherwise predisposed to commit. *Id.* In deciding whether entrapment exists as a matter of law, we view the evidence in the light most favorable to the government. *Id.* at 1348.

The initial contact between Special Agent Tyndall and Becker occurred after a Florida informant told government agents that Becker was looking to buy cocaine. Special Agent Tyndall represented himself to Becker, and via Becker to Hulett, as a fisherman who had found the cocaine floating off the Florida coast. The "fisherman" was willing to sell it for $14,000 per kilogram even though the retail price of cocaine in the St. Paul area was between $24,000 and $30,000. After his arrest Hulett reportedly told a law enforcement officer that he got involved in this transaction because "it was too good a deal to pass up." Trial Tr. 223.

■ After reviewing the record, we conclude there was no entrapment as a matter of law and the district court properly left to the jury, under correct instruction, the question of whether Hulett had been entrapped. We will not disturb the jury verdict. The evidence showed that Hulett routinely dealt in cocaine and that he sought to purchase large quantities of cocaine during the relevant time period. Thus he was clearly disposed to commit the crimes for which he was convicted. Moreover, Hulett was not cajoled into the transaction. To be sure, the price of $14,000 per kilogram was a favorable one for the Twin Cities area, but this argument was presented to the jury. We are not willing to say that the favorable price induced Hulett to violate the law, particularly when the record reveals that Hulett on occasion dealt with wholesalers from other states at prices comparable to those offered here.

---

1. Minnesota Bureau of Criminal Apprehension.

■ Hulett's second and related entrapment argument is based on a theory of "sentencing entrapment." We have defined sentencing entrapment as "outrageous official conduct [that] overcomes the will of an individual predisposed only to dealing in small quantities" for the purpose of increasing the amount of drugs in the conspiracy and the resulting sentence of the entrapped defendant. *United States v. Rogers*, 982 F.2d 1241, 1245 (8th Cir.1993) (quoting *United States v. Lenfesty*, 923 F.2d 1293, 1300 (8th Cir.), *cert. denied*, 499 U.S. 968, 111 S.Ct. 1602, 113 L.Ed.2d 665 (1991)).

■ Hulett argues that it was unfair to predicate his sentence on the four kilograms the government agent sold him because the price—half the retail market rate—was artificially low. He asserts that the district court should have based his sentence on the purchase of two kilograms—the quantity that the same amount of money would have bought at the usual retail price—or should have departed downward because of the coercive nature of the police conduct.

The district court rejected Hulett's arguments. With respect to the requested downward departure, the court found that "there are no conditions which have been brought to the Court's attention or factors which I am aware that would either require or, in my view, justify such a departure." Sent. Tr. 9.

We agree with the district court that no downward departure is justified here. We first note that an amendment to the sentencing guidelines that was enacted subsequent to Hulett's sentencing specifically addresses the argument raised by Hulett. That amendment states that the court may depart downward if, in a reverse sting operation, the government sets a price substantially below the market price that leads a defendant to purchase significantly more drugs than his resources would otherwise have allowed him to do. *See* U.S.S.G. § 2D1.1, comment. (n. 17).[2] Considering all of the circumstances in this case, however, we cannot say that the low price induced Hulett to buy quantities of cocaine that he otherwise lacked the resources to purchase, thereby driving up the sentencing range.[3]

We find no error by the district court in refusing to suppress fruits of the residential search, declining to find entrapment as a matter of law, and calculating Hulett's sentence. We therefore affirm Hulett's conviction and sentence.

---

2. The full text of application note 17, effective November 1, 1993, reads as follows:

If, in a reverse sting (an operation in which a government agent sells or negotiates to sell a controlled substance to a defendant), the court finds that the government agent set a price for the controlled substance that was substantially below the market value of the controlled substance, thereby leading to the defendant's purchase of a significantly greater quantity of the controlled substance than his available resources would have allowed him to purchase except for the artificially low price set by the government agent, a downward departure may be warranted.

3. Speaking only for myself, and not for Judge Magill or Judge Hansen, I would reject the use of reverse stings, particularly in this type of case. The State of North Dakota has held that this type of conduct constitutes entrapment as a matter of law, *State v. Kummer*, 481 N.W.2d 437 (N.D. 1992), and other states have similar holdings or otherwise have disapproved of such schemes. *See, e.g., Evans v. State*, 550 P.2d 830 (Alaska 1976); *Kemp v. State*, 518 So.2d 656 (Miss.1988); *Froggatt v. State*, 86 Nev. 267, 467 P.2d 1011 (1970); *State v. Johnson*, 127 N.J. 458, 606 A.2d 315 (1992); *Baca v. State*, 106 N.M. 338, 742 P.2d 1043 (1987); *Lynn v. State*, 505 P.2d 1337 (Okla.Crim.App.1973).

In my view, the reverse sting not only violates due process but also leads to corruption within the government itself. Government agents simply should not be in the business of selling cocaine or any other drugs.