_____

No. 95-2793
_____

United States of America,               *
                                         *
         Plaintiff - Appellee,           *
                                         *  Appeal from the United States
     v.                                  *  District Court for the
                                         *  District of South Dakota.
Mikkel H. Stavig,                        *
                                         *
         Defendant - Appellant.          *

_____

                  Submitted:  December 12, 1995

                     Filed:  April 10, 1996
_____

Before McMILLIAN, JOHN R. GIBSON, and BEAM, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.


     Mikkel H. Stavig appeals his sixty-month sentence imposed after he
pleaded guilty to possession of cocaine with intent to distribute in
violation of 21 U.S.C. § 841(a)(1) (1994).  He argues that the district
court[1] should have departed downward because government agents engaged in
sentencing entrapment during the reverse-sting operation leading to his
arrest.  He argues that he was willing to accept only 10 ounces, or
approximately 280 grams, but by providing an artificially low repayment
schedule and insisting on a one-kilogram purchase, the government caused
him to purchase the one-kilogram quantity.  He contends that the district
court should have used a ten-ounce quantity as the basis for his

_____

[1]The Honorable Lawrence L. Piersol, United States District
Judge for the District of South Dakota.

sentence under section 2D1.1 of the Sentencing Guidelines.  We affirm.

In 1986, Stavig received two concurrent four-year sentences for drug convictions in South Dakota state court.  Stavig sold marijuana to CI,[2] who lived in Miami, Florida.  Stavig also received cocaine from CI.  Following his 1987 release from prison, Stavig was discharged from parole in 1989.

Stavig renewed his association with CI in 1990 or 1991.  Through 1992, he engaged in six transactions, three with CI and three with another person, where he received cocaine and then later wired money in payment for the drugs.  In total, Stavig wired approximately $23,500 in payments for an estimated twenty or twenty-five ounces of cocaine.

In 1994, Stavig was living with his wife and children in Sioux Falls, South Dakota.  At sentencing, Stavig testified that he received a call at his home from CI on a Wednesday night in December 1994.  Unbeknownst to Stavig, CI had become a confidential informant for the government in Florida.  According to Stavig, CI stated that he was trying to get rid of a kilogram of cocaine.  Stavig testified that he told CI he would be interested in a couple of ounces sent through the mail.  He stated that he couldn't handle a whole kilogram, but he would check around.  He testified that CI responded that he had to get rid of the entire kilogram at one time.

According to Stavig, he spoke with CI again two days later.  Stavig suggested that CI send him four ounces of cocaine in the mail, and CI responded that he could not do that.  After discussing a price of $900 per ounce, the conversation ended.  Stavig

---

[2]We use the term CI because this person later became a confidential informant for the government.

testified that CI called his home about a week later, but he could not talk because his family was home at the time.

The government contends that these conversations did not occur as Stavig says. It states that CI made only one brief call on January 1, 1995 to Stavig before agents began monitoring and recording the conversations. Because of technical problems, calls on January 2 and January 13 were not recorded. Conversations on January 4, 5, 16, and 19 were successfully recorded by the government. A South Dakota DEA agent testified that CI's long distance phone bill showed no calls to South Dakota in December. No evidence was presented showing if CI might have called Stavig from another phone.

During the recorded January 4 conversation, Stavig and CI discussed that a courier was charging $5,000 to transport the kilogram of cocaine from Florida to South Dakota. CI stated that the high courier fee was why he had to take the entire kilogram. Stavig informed CI that he was planning a family vacation in Florida, and could get by with ten ounces until then. CI replied that he would not do ten ounces at $900 an ounce, and he did not want to risk sending cocaine through the mail. CI told Stavig that he would talk with the courier that afternoon, but to do it for anything less than a kilogram was not worth it.

CI called Stavig again the next day, January 5. Stavig informed CI that he was concerned about the large quantity of drugs. He said that he had talked to some of the guys and was scared of the big number. One of the guys said that he could get rid of a couple of eight balls a week, and Stavig figured he could come up with $500 a week himself. He indicated it might take him six months to sell that much cocaine. However, he was willing to take a kilogram, as long as he could get enough time to pay.

While the January 13 conversation was not recorded, Stavig testified that he told CI that he could not make a $2,000 a week payment for the cocaine, and they should forget the deal. Stavig testified that CI talked him back into the deal by lowering the payment amount to $1,000 a week.

CI had fronted cocaine to Stavig before. In a similar arrangement, Stavig had sent more than $23,000 in money orders to CI. Thus, CI agreed that Stavig could pay over time, as long as he was taken care of in three months, Stavig made a $1,000 weekly payment to CI, and paid the courier $2,500 upon delivery. Concerned about the courier fee, Stavig suggested that they wait until he went to Florida on vacation, and asked how much cocaine would still be available in two months. However, after further discussion, they agreed that delivery would take place in Sioux Falls.

CI placed the next recorded call to Stavig on January 16. The parties discussed plans for the delivery of the cocaine. CI reiterated that Stavig must have $2,500 to pay the courier upon delivery.

On January 19, two government agents posing as couriers checked into a Sioux Falls motel room. They called Stavig and informed him where to meet. Stavig drove to the motel, where he met one of the agents in the lobby. The agent escorted Stavig to the room, where Stavig gave the other agent $2,500, received the kilogram of cocaine, and was promptly arrested.

Stavig pleaded guilty to possession with intent to distribute a controlled substance. At sentencing, Stavig testified that he had never dealt with kilogram-size quantities before. When asked on cross examination if he had told CI that he could "get by with ten" ounces, Stavig responded: "I was just going up each time because he kept hanging on that; [he] wouldn't do anything except

a kilo." When asked why he simply did not tell CI, "No. I won't do it," Stavig answered: "I did do that. Then he drops the price on it. . . . How much I had to come up with a week; he dropped that $1,000, from $2,000 to $1,000, when I tried to back out of the deal."

A South Dakota DEA agent provided the only testimony regarding the reason agents selected one kilogram as the amount of cocaine to offer Stavig in the reverse sting. He testified:

> The information I was given from the Agents in Florida was that [CI] had indicated that he had supplied kilogram quantities to Mr. Stavig in the past.
>
> . . . .
>
> [t]he quantity was, basically, determined by the Agents in Florida before we became really involved in it. When they contacted me, they indicated that [CI] had talked to Mr. Stavig and had indicated he was interested in taking a kilogram of cocaine. So that's what I based my operational plan around was obtaining a kilogram of cocaine from our laboratory in Chicago to use in the reverse [sting].

The district court was concerned about the lack of reliable evidence regarding the reason for choosing a one-kilogram quantity. The court noted that hearsay testimony is allowed in sentencing hearings, but stated: "We don't have the informant nor the Agents that were involved down in Florida here, so [the South Dakota agent] winds up testifying on the basis of what he understands from what he was told by others and we have to rely on that."

The district court recognized that the Sentencing Commission added Application Note 17 of section 2D1.1 of the Sentencing Guidelines to address cases involving reverse-sting operations. The court noted that Application Note 17 expressly describes the situation where the price was set substantially lower than the market price, thus allowing the defendant to purchase a larger

quantity.  Stavig's case involved agents fronting drugs with favorable repayment terms of $1,000 a week.  In the court's opinion, this situation did not fall within the boundaries of Application Note 17 of the Sentencing Guidelines.  The district court concluded that, although Stavig asked for ten ounces, he was willing to take a kilogram of cocaine as long as he could get a long enough period of time to pay it off.  The court refused to depart downward, holding Stavig responsible for the entire kilogram quantity, stating:  "I think that you were worked over some with regard to the amount, but you could have stepped away and you didn't.  You were ready for a kilo, if you could just handle the payments."  Stavig received a sixty-month sentence.  He appeals.

## I.

The government argues that we need not reach the question of sentencing entrapment because the district court's refusal to depart downward is not reviewable on appeal.  While a district court's refusal to exercise its discretion to depart downward is not reviewable on appeal, we may review the court's application of the Sentencing Guidelines.  United States v. Olson, 931 F.2d 1250, 1252 (8th Cir.), cert. denied, 502 U.S. 886 (1991).  We review application of the Sentencing Guidelines de novo.  United States v. Gullickson, 981 F.2d 344, 346 (8th Cir. 1992).  The district court's finding of the drug quantity to be used in sentencing is reviewed under the clearly erroneous standard.  United States v. Williams, 994 F.2d 1287, 1293 (8th Cir. 1993).  The government must prove the quantity by a preponderance of the evidence.  United States v. Smiley, 997 F.2d 475, 481 (8th Cir. 1993).  In contrast, the defendant has the burden of showing that sentencing entrapment occurred.  United States v. Naranjo, 52 F.3d 245, 250 (9th Cir. 1995); see also United States v. Bender, 33 F.3d 21, 23 (8th Cir. 1994) (stating that "the government has the burden of proof with respect to the base offense level and any enhancing factors,

[while] [t]he defendant has the burden to prove mitigating factors" (citations omitted)).

"[S]entencing entrapment may occur where outrageous government conduct overcomes the will of a defendant predisposed to deal only in small quantities of drugs, for the purpose of increasing the amount of drugs and the resulting sentence imposed against that defendant." United States v. Aikens, 64 F.3d 372, 376 (8th Cir. 1995), petition for cert. filed, (U.S. Dec. 21, 1995) (No. 95-7315); United States v. Barth, 990 F.2d 422, 424 (8th Cir. 1993). Section 2D1.1 of the Sentencing Guidelines incrementally increases a defendant's base offense level depending on the amount of drugs involved. These incremental sentencing ranges create the potential for sentencing abuse by government agents. See United States v. Calva, 979 F.2d 119, 123 (8th Cir. 1992). We have repeatedly recognized "that sentencing entrapment may be legally relied upon to depart under the sentencing guidelines."[3] Barth, 990 F.2d at

---

[3]We recognize that some circuits refuse to acknowledge the concept of sentencing entrapment or sentencing manipulation. See, e.g., United States v. Miller, 71 F.3d 813, 818 (11th Cir. 1996) (citing United States v. Williams, 954 F.2d 668, 673 (11th Cir. 1992)); United States v. Walls, 70 F.3d 1323, 1329 (D.C. Cir. 1995), petition for cert. filed, (U.S. Mar. 6, 1996) (No. 95-8206); United States v. Garcia, No. 93-2512, 1996 WL 126003, at *3 (7th Cir. Mar. 22, 1996) (holding "that there is no defense of sentencing manipulation in this circuit"). Beginning with United States v. Lenfesty, 923 F.2d 1293, 1300 (8th Cir.), cert. denied, 499 U.S. 968 (1991), when we stated that "[w]e are not prepared to say there is no such animal as `sentencing entrapment,'" our circuit has often acknowledged the doctrine's existence. See, e.g., Aikens, 64 F.3d at 376; United States v. Hulett, 22 F.3d 779, 782 (8th Cir.), cert. denied, 115 S. Ct. 217 (1994); Barth, 990 F.2d at 424-25; Calva, 979 F.2d at 123. Other circuits have also recognized the defense in one form or another. See, e.g., Naranjo, 52 F.3d at 249-51; United States v. Staufer, 38 F.3d 1103, 1106-08 (9th Cir. 1994); United States v. Connell, 960 F.2d 191, 196 (1st Cir. 1992). The Fourth Circuit has declined to rule on the doctrine's viability because the facts of the particular case could not support the defense even if it legally existed. United States v. Jones, 18 F.3d 1145, 1151-55 (4th Cir. 1994).

424-25. However, we have yet to find that sentencing entrapment existed under the facts of a particular case.

The Sentencing Commission has also recognized the potential for government agents to use their knowledge of the Sentencing Guidelines to manipulate the quantity of drugs sold in a reverse sting in order to increase a defendant's sentence. See Staufer, 38 F.3d at 1107; see also Hulett, 22 F.3d at 782. Application Note 17 of section 2D1.1 allows the district court to depart downward when government agents set a below market price, allowing the defendant to purchase a significantly larger quantity of drugs.[4] Application Note 12 of section 2D1.1 provides that when a defendant is not capable of producing the negotiated quantity of drugs, the court must exclude from its sentencing calculation the amount which the defendant is unable to produce.[5] Application Note 12 also applies

---

[4]USSG § 2D1.1, comment. (n.17) (Nov. 1994) states:

> If, in a reverse sting (an operation in which a government agent sells or negotiates to sell a controlled substance to a defendant), the court finds that the government agent set a price for the controlled substance that was substantially below the market value of the controlled substance, thereby leading to the defendant's purchase of a significantly greater quantity of the controlled substance than his available resources would have allowed him to purchase except for the artificially low price set by the government agent, a downward departure may be warranted.

[5]The final paragraph of USSG § 2D1.1, comment. (n.12) (Nov. 1994) states:

> In an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount. However, where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing.

-8-

to cases involving reverse-sting operations. See United States v. Nichols, 986 F.2d 1199, 1204 (8th Cir. 1993). When undercover government agents sell drugs to a defendant, "we construe the language of the guideline application note as referring to purchase or acquisition by [the defendant] for subsequent distribution . . . ." Id.

Thus, the guidelines require the district court to determine if the government has engaged in sentencing entrapment.[6] Naranjo, 52 F.3d at 250. "Under Note 12, the district court `shall exclude' from the [sentencing] calculation the amount of drugs which flow from sentencing entrapment. Further, under Note 17, a downward departure is warranted when sentencing entrapment occurs." Id. (footnote omitted). When sentencing entrapment occurs, "the sentencing court may deal with the situation by excluding the tainted transaction or departing from the sentencing guidelines." Barth, 990 F.2d at 425.

The district court found that Application Note 17 did not apply here because Stavig did not receive a larger quantity of cocaine due to a lower price. In the court's opinion, Stavig was willing to accept the entire kilogram, as long as he could negotiate satisfactory repayment terms. This situation did not fall within the boundaries of Application Note 17. The district court did not err in so holding.

Stavig had received cocaine from CI before under similar financial arrangements. He testified that his six previous transactions resulted in payments of about $23,000 for

---

[6]The significance of Application Notes 12 and 17 is that they show "that the Sentencing Commission is aware of the unfairness and arbitrariness of allowing drug enforcement agents to put unwarranted pressure on a defendant in order to increase his or her sentence without regard for his predisposition [or] his capacity to commit the crime on his own . . . ." Naranjo, 52 F.3d at 250 (quoting Staufer, 38 F.3d at 1107).

approximately twenty to twenty-five ounces of cocaine, or more than half a kilogram.  Regardless of how or why the one-kilogram quantity was chosen by the government in this case, it fell within the same base offense level (one-half to two kilograms) as Stavig's former dealings with CI and his associates.  See USSG § 2D1.1(c)(7).  This transaction fails to show that the government provided Stavig with a financial arrangement so attractive that he was able to purchase a significantly larger quantity than he would have otherwise purchased.

On these facts, we hold that the government did not engage in sentencing entrapment.  Thus, the district court did not err in refusing to depart downward under the guidelines and sentencing Stavig to a sixty-month mandatory minimum sentence under 21 U.S.C. 841(a)(1).

## II.

Stavig "has the burden of proof to demonstrate that he had neither the intent nor the resources for completing [the one]- kilogram cocaine transaction."  Naranjo, 52 F.3d at 250.  He failed to satisfy this burden, and sentencing entrapment did not exist in this case.  However, we continue to be deeply concerned about the proclivity of reverse-sting operations, such as this one, to raise questions of sentencing entrapment.

Sentencing entrapment claims arise in this context largely because "sentencing discretion is delegated all the way down to the individual drug agent operating in the field."  Staufer, 38 F.3d at 1107 (quoting district court).  Further, the potential exists for the sentence to be determined by a confidential informant, when he notifies government agents of the amount a defendant is likely to accept.  This is what the record before us demonstrates.  Considering that most confidential informants are seeking a reduction in their own sentence through substantial government

assistance, great incentive exists for an informant to arrange large scale transactions and to encourage defendants to accept large quantities.

Government agents must seek approval before conducting any reverse-sting operation. Here, the South Dakota DEA agent testified that approval would only be given in cases involving a significant violator. A significant violator is a person dealing in a substantial amount of drugs for the area. Thus, the agent's quantity decision determines not only the defendant's sentence, but also if the reverse sting will occur at all.

The government's only evidence regarding why one kilogram was chosen came from the South Dakota DEA agent who stated that Florida agents told him that CI told them that Stavig had indicated an interest in a one-kilogram quantity. There was no testimony regarding how the agents determined that Stavig was a significant violator, or if the one-kilogram quantity was necessary to receive approval for the reverse sting. In fact, the district court was quite concerned with the hearsay nature of the evidence presented by the government.

The Sentencing Guidelines state:

> In determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial. Any information may be considered, so long as it has sufficient indicia of reliability to support its probable accuracy. Reliable hearsay evidence may be considered. Out-of-court declarations by an unidentified informant may be considered where there is good cause for the nondisclosure of his identity and there is sufficient corroboration by other means. Unreliable allegations shall not be considered.

USSG § 6A1.3, comment. (citations and internal quotations omitted). "The determination of whether hearsay is sufficiently reliable to warrant credence for sentencing purposes necessarily depends upon

the particular circumstances of each case."  United States v. Wise, 976
F.2d 393, 403 (8th Cir. 1992) (en banc), cert. denied, 507 U.S. 989 (1993).
We review the district court's determination for abuse of discretion.
United States v. Cassidy, 6 F.3d 554, 557 (8th Cir. 1993).

While we are also troubled by the reliability of the hearsay evidence
offered in this case, we cannot conclude that the district court abused its
discretion in allowing it.  This is especially true here, because Stavig
failed to meet his burden of showing sentencing entrapment had occurred.
The government was required to prove the one-kilogram quantity by a
preponderance of the evidence, but it was uncontested that Stavig accepted
the kilogram from the officer at the hotel.  Stavig failed to make a prima
facie showing of sentencing entrapment, and the government was not required
to produce evidence rebutting his claim.

The district court conducted a lengthy sentencing hearing.  After
detailed testimony regarding the transactions, it conscientiously made
well-supported findings of fact.  These findings were not clearly erroneous
and they pinpointed the determinative issues.  Thus, the district court did
not err in imposing Stavig's sentence.

We have frequently expressed discomfort with reverse-sting
operations, and we confess our discomfort with this case.  Because of the
great potential for abuse, these cases require the most careful scrutiny
and a probing examination by the district court.  Such was given here, and
we affirm the sentence imposed by the district court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.