_____

No. 96-1762
_____

United States of America,      *
                               *
          Appellee,            *
                               *  Appeal from the United States
     v.                        *  District Court for the
                               *  Western District of Missouri.
Tony J. Byler,                 *
                               *
          Appellant.           *

_____

Submitted: September 10, 1996

Filed: October 21, 1996
_____

Before MAGILL, FLOYD R. GIBSON, and MORRIS SHEPPARD ARNOLD, Circuit
     Judges.

_____

MAGILL, Circuit Judge.

The defendant, Tony J. Byler, appeals from his conviction of conspiracy to distribute methamphetamine (count I), attempt to possess with intent to distribute methamphetamine (count II), and use of a firearm during drug trafficking crimes (count III), in violation of 21 U.S.C. §§ 841(a)(1), 843(b), 846, and 18 U.S.C. §§ 2, 924(c). The defendant argues that the district court[1]: (1) committed reversible error in admitting postarrest hearsay; (2) incorrectly calculated drug quantity; and (3) committed reversible trial error. We disagree and accordingly affirm.

_____

[1]The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri.

## I.

## A.

The government's case against the defendant was based largely on the testimony of codefendant Kenneth F. Wishon.  At trial, Wishon testified that he delivered two pounds of methamphetamine to the defendant sometime in April 1995.  Wishon also testified that the defendant paid him $20,000 at that meeting.

According to Wishon, the $20,000 was for methamphetamine that Wishon had previously delivered to the defendant's twin brother, Kevin Byler, and to one of Kevin's associates.  The payment therefore was not for the two pounds of methamphetamine delivered at the April meeting.  The defendant instead took the April delivery on a credit basis, agreeing to pay later when Wishon made his next delivery.

About two months later, on June 8, 1995, Wishon was pulled over by police and arrested on his way to delivering two packages of methamphetamine to the defendant.  In Wishon's car were three packages of d-methamphetamine of varying purity levels.  Each package weighed a little less than a pound.[2]

After Wishon agreed to cooperate, the police allowed him to continue with his delivery.  The police attached a listening device to Wishon and followed closely behind as he proceeded to the defendant's house.

When Wishon arrived at the defendant's house, he asked if the defendant had the payment for the April delivery.  The defendant

_____

[2]The respective weight and purity levels of the three packages were as follows: 374.4 grams at 40%, 404.9 grams at 33%, and 384.3 at 28%.

responded affirmatively. Then, Gary Crouch, who was also at the defendant's house when Wishon arrived, asked Wishon if he wanted a soda pop. Wishon declined the offer. Crouch, however, insisted that Wishon take a six-pack of soda, and Wishon eventually accepted the six-pack.

The defendant then suggested that the meeting be reconvened at a nearby Hardee's restaurant, but the defendant never showed up to meet him. Wishon therefore returned to the defendant's house. Once there, he again asked to be paid for the April delivery. The defendant responded that the money was in the six-pack, which Wishon had earlier placed in his car after accepting it from Crouch. Wishon returned to his car where he found $20,000 concealed in the six-pack. Before he could deliver the methamphetamine, the police raided the defendant's house.

The police found the defendant holding a loaded revolver in his right hand. Upon arresting him, the police also seized a second loaded handgun from the defendant's left rear pants pocket.

## B.

At trial, officer Michael Cooper testified at some length regarding postarrest statements made by Wishon. The defendant objected several times to this testimony but was overruled each time. The district court then reconsidered its decision and struck the testimony. The court also instructed the jury to disregard the testimony and then polled the jury to insure that each juror would be able to disregard the testimony. Each juror responded affirmatively.

The defendant also moved for a mistrial on the ground that this testimony was inadmissible hearsay. Conceding that it had erred and expressing some misgivings about the efficacy of its curative instruction, the district court nonetheless denied the

motion for a mistrial.  With the jury absent, the court reasoned "[t]he evidence at this point is overwhelming relative to Defendant Byler, that he was a member of the conspiracy," II Trial Tr. at 317, and therefore decided to proceed with the trial.

Later in the trial, the defendant objected to the district court's decision to reject jury instructions proffered by the defendant.  Based on the instructions that were given by the district court, the jury returned a guilty verdict.

At sentencing, the district court followed the presentence investigation report and found that the defendant had delivered three pounds of methamphetamine in April 1995, despite Wishon's testimony at trial that he had delivered only two pounds in April.  Based on this finding, the district court calculated the defendant's base offense level to be 34.  The district court also found that the defendant's record placed him in criminal history category III.  In accordance with the Sentencing Guidelines, the district court sentenced the defendant to two concurrent terms of imprisonment of 188 months for counts I and II of the indictment, and a consecutive term of 60 months of imprisonment for count III.

## II.

The defendant argues that the district court committed reversible error by allowing officer Cooper to testify at some length to Wishon's postarrest statements.  The defendant contends that this testimony was inadmissible hearsay because Wishon's postarrest statements could not have been made in furtherance of the conspiracy.  See Fed. R. Evid. 801(d)(2)(E); see also United States v. Carper, 942 F.2d 1298, 1301 (8th Cir.) (testimony of police officer regarding postarrest statements made by codefendant was inadmissible hearsay), cert. denied, 502 U.S. 993 (1991).

We will not reverse a conviction on the basis of erroneously

-4-

admitted hearsay testimony if the error was harmless.  See Carper, 942 F.2d at 1301-02; see also United States v. Escobar, 50 F.3d 1414, 1423 n.6 (8th Cir. 1995).  To determine if an evidentiary error was harmless, we must review the entire record.  United States v. Mitchell, 31 F.3d 628, 632 (8th Cir. 1994).  If we find "that no substantial rights of the defendant were affected, and that the error had no, or only slight, influence on the verdict[,]" then the error was harmless.  Id.

After reviewing the entire record, we conclude that this standard has been met.  We reach this conclusion because the district court took strong and effective corrective actions to minimize any prejudicial effect caused by officer Cooper's testimony before proceeding with the trial.

Ordinarily, an instruction to the jury to disregard hearsay testimony can cure the prejudicial effect caused by the erroneous admission of such evidence.  See United States v. Maza, 93 F.3d 1390, 1397 (8th Cir. 1996); United States v. Nelson, 984 F.2d 894, 897 (8th Cir.), cert. denied, 508 U.S. 966 (1993).  Moreover, we have recognized that a district court has broad discretion in determining whether allegedly prejudicial testimony has tainted a trial to such an extent as to require a mistrial.  See Maza, 93 F.3d at 1397.

Here, the district court struck officer Cooper's testimony regarding Wishon's postarrest statements and carefully instructed the jury to disregard that testimony.  Moreover, the district court polled the jurors to insure both that they understood and could comply with the instruction. Finally, the district court exercised its discretion in light of the overwhelming evidence against the defendant and chose to proceed with trial, denying the defendant's motion for a mistrial.  We therefore find no reversible error because any error in allowing officer Cooper's testimony regarding Wishon's postarrest statements was harmless.

-5-

## III.

The defendant next argues that the district court incorrectly calculated the drug quantity used in applying the Sentencing Guidelines. The defendant contends that the district court incorrectly found that the defendant received three pounds of methamphetamine compound in April, despite the fact that Wishon, who offered the only testimony as to this delivery, testified at trial that only two pounds were delivered. Notwithstanding this inconsistency, we find no reversible error.

To include the April delivery in the drug quantity calculated for sentencing, the government first needed to prove by a preponderance of the evidence that the delivery in fact occurred. See United States v. Campos, 87 F.3d 261, 263 (8th Cir. 1996); United States v. Stavig, 80 F.3d 1241, 1245 (8th Cir. 1996). Moreover, the finding of drug quantity is a finding of fact reviewed only for clear error. Stavig, 80 F.3d at 1245. Based on the direct testimony of Wishon, it was not clearly erroneous for the district court to find that the defendant took delivery of methamphetamine in April.

The government also needed to prove by a preponderance of the evidence the quantity of methamphetamine delivered to the defendant in April. See United States v. Simmons, 964 F.2d 763, 771 (8th Cir.) ("[A]t the sentencing phase, . . . the government must generally satisfy a preponderance of the evidence standard."), cert. denied, 506 U.S. 1011 (1992). Wishon's testimony established by a preponderance of the evidence that only two, not three, pounds of methamphetamine were delivered to the defendant in April. We therefore agree with the defendant that the district court erred in its finding that three pounds were delivered in April. This error was harmless, however, because the defendant was nevertheless correctly sentenced at a base offense level of 34.

For a delivery of methamphetamine compound rather than pure methamphetamine, we are required to "use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the . . . methamphetamine (actual), whichever is greater."  U.S.S.G. § 2D1.1(c), note B; see also United States v. Newton, 31 F.3d 611, 614 (8th Cir. 1994).  We must therefore calculate both the entire weight of the mixture and the weight of the actual methamphetamine and then take the one that gives the higher offense level.

Here, the entire weight of the mixture was (1) the two pounds of methamphetamine delivered in April and (2) the two lightest packages of methamphetamine in Wishon's car at the time of the defendant's arrest.[3] Combined, these deliveries come to approximately 1.67 kilograms, which constitutes a base offense level of 32.  See U.S.S.G. § 2D1.1(c)(4).

The defendant argues that we should stop here.  However, in accordance with the Sentencing Guidelines, we must also determine the quantity of actual methamphetamine delivered to the defendant.  To do so, we must multiply the purity level of the methamphetamine compound by its gross weight.  Cf. U.S.S.G. § 2D1.1(c), note B; see also United States v. Bogusz, 43 F.3d 82, 87 (3d Cir. 1994) ("[M]ethamphetamine (actual) refers to the net amount of methamphetamine hydrochloride after all impurities, waste, byproducts, or cutting agents are removed."), cert. denied, 115 S. Ct. 1812 (1995).

Although the April delivery was never recovered, the Sentencing Guidelines provide that unrecovered quantities can be

---

[3]The defendant does not dispute the inclusion of the June delivery in the calculation of drug quantity for sentencing purposes.  We also note that, given the evidence presented by the government, it was not clearly erroneous for the district court to include the June delivery in its calculation.

estimated from similar known transactions.  See U.S.S.G. § 2D1.1, comment. (n.12) ("Where there is no drug seizure . . . , the court shall approximate the quantity of the controlled substance.  In making this determination, the court may consider . . . similar transactions in controlled substances by the defendant . . . .").  This court has held that purity levels can also be estimated in this way.  Newton, 31 F.3d at 614.

Here, based on Wishon's testimony, it was not clearly erroneous for the district court to follow the presentence investigation report and conclude that the April and June deliveries involved similar purity levels. As Wishon testified, each transaction involved a purchase of approximately two pounds of methamphetamine compound for $20,000, suggesting that the methamphetamine delivered on each of those occasions was of roughly comparable purity levels.  Accordingly, it was not clearly erroneous for the district court to find that the April delivery had a purity level of 28%, which was the purity level of the least pure package of methamphetamine recovered from Wishon's car on June 8, 1995.

Thus, multiplying the two pounds of methamphetamine compound delivered to the defendant in April by its estimated purity level of 28% yields 254.0 grams of actual methamphetamine.  We then add this amount to the quantity of actual methamphetamine in the two packages seized from Wishon's car that contained the least amount of actual methamphetamine. Doing so gives us a total of 495.2 grams of actual methamphetamine, which translates into a base offense level of 34.  See U.S.S.G. § 2D1.1(c)(3). Therefore, taking the higher of the two offense levels as dictated by U.S.S.G. § 2D1.1(c), note B, the defendant's base offense level remains unchanged at 34, even with a finding that only two, not three, pounds of methamphetamine compound were delivered in April.

Any error that may have resulted from using three pounds for

the April delivery was therefore harmless.  <u>See</u> <u>Williams v. United States</u>, 503 U.S. 193, 203 (1992); <u>United States v. Cron</u>, 71 F.3d 312, 313-14 (8th Cir. 1995).  As the calculations above demonstrate, whether two or three pounds were delivered in April does not change the defendant's base offense level.  Moreover, given his criminal history category of III, the defendant was sentenced to the shortest possible term of imprisonment within the range set by the Sentencing Guidelines for a base offense level of 34.  As a result, we conclude that a remand for resentencing is unnecessary.

## IV.

The defendant contends that there was insufficient evidence to convict him of the drug trafficking offenses with which he was charged. The defendant also contends that the district court erred in refusing the jury instructions that he proffered.  After considering the record as a whole, we find no merit to these claims.  <u>See</u> 8th Cir. R. 47B.

## V.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.