**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 14 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ALFONSO BELTRAN-MARTINEZ,

Defendant-Appellant.

No. 97-4108
(D.C. No. 96-CR-277)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **HOLLOWAY**, and **BRISCOE**, Circuit Judges.

Defendant Alfonso Martinez-Beltran pleaded guilty to one count of

distributing methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 18

U.S.C. § 2, and was sentenced to 140 months' imprisonment. Defendant appeals

his sentence, claiming the district court improperly calculated the amount of

methamphetamine attributable to him for purposes of determining his base offense

level, and the court failed to rule on his request for a downward adjustment for

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

his alleged role as a minor participant. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I.

On two separate occasions in October 1996, as part of its investigation of a drug operation, Drug Enforcement Administration (DEA) task force undercover agents in Salt Lake City purchased narcotics from Roberto Mendez-Gomez. On November 21, 1996, an undercover agent, via a cooperating witness, agreed to purchase approximately three pounds of methamphetamine from Mendez-Gomez for a total price of $27,000. Under the terms of the agreement, Mendez-Gomez was to deliver the methamphetamine the following morning to a hotel room rented by the undercover agent.

Mendez-Gomez did not arrive at the hotel room as planned on the morning of November 22 but the cooperating witness had several telephone conversations with his girlfriend, Brandy Barcelon, who assured the cooperating witness that the methamphetamine would be delivered. Mendez-Gomez arrived at the hotel room at approximately 2:50 p.m., accompanied by defendant. After they entered the hotel room, defendant lifted his shirt to remove a one-pound package of methamphetamine, which he gave to the cooperating witness. In return, the undercover agent gave defendant $9,000 in cash, which defendant counted. Mendez-Gomez told the undercover agent that two additional pounds of

methamphetamine were being delivered to his apartment. The undercover agent indicated he would buy the additional methamphetamine, but it would have to be immediately because he was scheduled to leave the city on an afternoon flight. Both Mendez-Gomez and defendant used the telephone in the hotel room in the presence of the undercover agent to make arrangements for delivery of the methamphetamine. Mendez-Gomez and defendant were arrested by task force agents as they left the hotel room.

II.

**Calculation of defendant's base offense level**

Defendant contends the district court erred in calculating his base offense level under U.S.S.G. § 2D1.1(c) by finding the applicable amount of methamphetamine at issue was three pounds (the total amount defendant agreed to sell to the undercover agent), rather than one pound (the amount defendant actually delivered prior to his arrest). According to defendant, he was not capable of producing the additional methamphetamine and he did not intend to do so.

We review a sentencing court's drug quantity determinations for clear error. United States v. Ruiz-Castro, 92 F.3d 1519, 1534 (10th Cir. 1996). Under the Sentencing Guidelines, the offense level of a defendant convicted of a narcotics offense is ordinarily governed by the amount of narcotics involved, including quantities negotiated but not ultimately consummated. See U.S.S.G. §

-3-

2D1.1(a)(3), (c), and comment n.12; United States v. Lombardi, 138 F.3d 559, 562 (5th Cir. 1998); United States v. Desimone, 119 F.3d 217, 228 (2d Cir. 1997); United States v. Stavig, 80 F.3d 1241, 1246-47 (8th Cir. 1996); United States v. Raven, 39 F.3d 428, 432 (3d Cir. 1994); United States v. Steward, 16 F.3d 317, 321-22 (9th Cir. 1994). However, Application Note 12 to § 2D1.1 provides:

> If . . . the defendant establishes . . . he or she did not intend to provide, or was not reasonably capable of providing, the agreed-upon quantity of the controlled substance, the court shall exclude from the offense level determination the amount of controlled substance that the defendant establishes that he or she did not intend to provide or was not reasonably capable of providing.

To take advantage of Application Note 12, a defendant has the burden of proving either lack of intent or lack of capability. See Stavig, 80 F.3d at 1246-47; but see Raven, 39 F.3d at 432-35 (discussing burden of proof issue under older version of Application Note 12, which did not expressly impose burden on defendant; court concluded defendant bore burden of production but not burden of persuasion).

Here, the government clearly carried its burden of proving the quantity of drugs by a preponderance of the evidence. See United States v. Sloan, 65 F.3d 861, 865 (10th Cir. 1995). In particular, the government relied on the uncontroverted factual findings in the presentence report (PSR), which indicated defendant was personally involved in negotiations with the undercover agent to deliver two additional pounds of methamphetamine. Record III, PSR at 5 (defendant "admitted . . . he was involved in delivering approximately 400 grams

-4-

of methamphetamine to the [cooperating witness] and DEA task force members for $9,000, and making arrangements for delivery of two additional pounds of the substance"). This evidence was clearly sufficient to allow the district court to conclude defendant had both the intent to deliver the additional methamphetamine and the capability to do so. See Desimone , 119 F.3d at 229 (pre-arrest negotiations ordinarily constitute reliable admissions as to defendant's intent and capacity to produce particular quantity of narcotics). Although defense counsel argued, both in response to the PSR and during sentencing, that defendant did not intend to deliver the agreed amount and was incapable of doing so, defendant presented no evidence on this point. Because defendant failed to satisfy his burdens of production and proof on this issue, the district court's rejection of his intent and capacity arguments was not clearly erroneous.

**Minor participant adjustment**

Defendant contends the district court failed to consider his request for a two-level adjustment pursuant to U.S.S.G. § 3B1.2 for being a minor participant in the charged crime. Prior to sentencing, defendant filed objections to the PSR asking for the adjustment. The probation office responded that defendant was not entitled to a minor participant adjustment because he was equally culpable with Mendez-Gomez. At sentencing, defense counsel asked the court "to categorize

[defendant] as a minimal participant -- not a minimal, but a minor participant" in the charged offense. Record II at 13. After allowing both sides to argue the issue, the court "reject[ed] [defense counsel's] argument relative to the defendant being a minimal participant in this transaction," and "adopt[ed] the factual findings and guideline application in the presentence report." Id. at 19-20. Prior to entering judgment, the court filed minutes of the sentencing hearing, stating: "The Court rejected the argument of [defense counsel] that the [defendant] should receive a reduction for his role in the offense as a minor participant." Record I, Doc. 59 at 1.

Although defendant seizes upon the district court's reference at sentencing to "minimal participant," we believe the court fully intended to address and reject defendant's "minor participant" argument. At no time did defendant assert he was entitled to a "minimal participant" adjustment. [1] Further, we find it persuasive that the court adopted the findings of the PSR, which expressly rejected defendant's request for a minor participant adjustment. We also find compelling the minutes of the sentencing hearing, which accurately reflect the

_____

[1] In his appellate brief, defendant contends he "argued in his Position With Respect to Sentencing Factors and subsequently at sentencing itself, that he should [be] given a reduction based upon role in the offense as a minor or minimal participant." Aplt's Br. at 12. This contention is wholly unsupported by the record. As outlined, the record indicates defendant sought only an adjustment for being a minor participant in the offense.

-6-

court's intent to reject the "minor participant" argument. Based upon the record before us, we conclude the court's reference to "minimal participant" at sentencing was simply a misstatement precipitated by defense counsel's own misstatement earlier in the hearing.

We further conclude the district court did not commit clear error in refusing to grant defendant a minor participant adjustment. United States v. Ayers, 84 F.3d 382, 383 (10th Cir. 1996) (outlining applicable standard of review). The sole focus in determining whether a minor participant adjustment is appropriate is "culpability, not status or position." United States v. Donaldson, 915 F.2d 612, 615 (10th Cir. 1990). A minor participant is defined as "any participant who is less culpable than most other participants, but whose role could not be described as minimal." Id.; U.S.S.G. § 3B1.2, comment n.3; see United States v. Smith, 131 F.3d 1392, 1399 (10th Cir. 1997), cert. denied 118 S. Ct. 1109 (1998). Examples of minimal participants include "someone who played no other role in a very large drug smuggling operation than to offload part of a single marihuana shipment, or in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs." U.S.S.G. § 3B1.2, comment n.2.

As described in the PSR, defendant was at least as culpable as his codefendants. In particular, he personally delivered the methamphetamine to the undercover agent and accepted payment. In addition, he assisted Mendez-Gomez

in making telephone calls to secure the additional two pounds of methamphetamine. Defendant did not controvert these facts and did not present any evidence of his own at sentencing. Defendant has failed to satisfy his burden of proving by a preponderance of the evidence that he was entitled to an adjustment for minor participation. Smith, 131 F.3d at 1399.

The judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge