# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3111

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Northern District of Iowa. |
| | * | |
| Casey Bastian, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: April 14, 2010
Filed: May 10, 2010

_____

Before RILEY, Chief Judge, COLLOTON, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Casey J. Bastian pled guilty to one count of sexual exploitation of a child in violation of 18 U.S.C. §§ 2251(a) and (e), and one count of receipt of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1). Five days after the district court[1] accepted his plea, Bastian moved to withdraw it. This motion was denied following an evidentiary hearing. Bastian was sentenced to 600 months'

_____

[1] The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa, adopting the report and recommendation of the Honorable Jon S. Scoles, United States Magistrate Judge for the Northern District of Iowa.

imprisonment. He appeals the denial of the motion to withdraw his plea, and his sentence. Having jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, this court affirms.

## I.

Bastian was indicted for sexual exploitation of a child (count 1), receipt of child pornography (count 2), and possession of child pornography (count 3). On December 2, 2008, the government sent Bastian a proposed plea agreement. Later that day, it sent an amended plea agreement. On December 3, Bastian and his attorney signed the amended plea agreement, to plead guilty to counts 1 and 2.

On December 8, a change-of-plea hearing was scheduled before the magistrate judge. At the hearing, however, Bastian said he did not want to plead guilty. Later that day, Bastian decided to plead guilty, but shortly before a second hearing, he decided not to. Bastian asked that another plea hearing be scheduled before the time expired (under the plea agreement) for receiving a third level for acceptance of responsibility.

On December 11, another change-of-plea hearing was held. Bastian again expressed hesitancy about pleading guilty, but after a brief recess he proceeded. The judge explained to Bastian the rights he was giving up, and obtained a factual basis for both counts. Bastian stated that he had reviewed the plea agreement with his attorney before signing it, and had no questions about its terms. The judge advised Bastian of the possible sentencing consequences, and questioned him about the voluntariness of his plea. Bastian entered guilty pleas to counts 1 and 2. The judge issued a report and recommendation that Bastian's plea be accepted, advising him that he had 10 days to object. Bastian did not file any objections. On December 31, the district judge accepted the report and recommendation, and Bastian's guilty plea.

Bastian wrote a letter dated January 5, 2009, to the district judge, requesting withdrawal of his guilty plea and appointment of a new attorney. Bastian complained that his attorney had made misrepresentations, they had poor communication, and he was pressured by his attorney to plead guilty. He also claimed that he left voice messages for his attorney asking him to move to withdraw his plea before it was accepted by the district court, but his calls were not returned.

The court appointed new counsel for Bastian, and held a hearing on his motion to withdraw his plea. Bastian's former attorney testified that he had no record of any calls from Bastian between December 11 and January 5 that he did not return. He stated that Bastian's mother left a message on December 29, saying that Bastian had changed his mind again and wanted to withdraw his plea. However, he testified that on December 30, he spoke with Bastian by phone, who assured him that he did not want to withdraw his plea.

The magistrate judge recommended that Bastian's motion to withdraw his guilty plea be denied. The judge found credible the testimony of Bastian's former attorney, that Bastian did not instruct him to move to withdraw the plea before it was accepted by the district court. The judge found no fair and just reason to withdraw his plea. The district judge adopted the report and recommendation.

This court reviews a denial of a defendant's motion to withdraw a guilty plea for abuse of discretion. *United States v. Gamble*, 327 F.3d 662, 663 (8th Cir. 2003). A defendant may withdraw his plea of guilty "before the court accepts the plea, for any reason or no reason." **Fed. R. Crim. P. 11(d)(1)**. Before the district court accepted the plea, Bastian did not move for leave to withdraw it. Bastian argues that he should not be penalized for failed attempts to communicate his instructions to his attorney. The district court found that Bastian specifically told his attorney he did not want to withdraw his plea the day before it was accepted by the court. Bastian was not entitled to withdraw his plea as a matter of right.

A defendant may also withdraw a guilty plea "after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." **Fed. R. Crim. P. 11(d)(2)(B)**. The defendant has the burden to establish such a reason. ***United States v. Prior***, 107 F.3d 654, 657 (8th Cir. 1997). Bastian states that the court was aware that he was dissatisfied with his attorney on December 8, when he twice changed his mind about entering a plea. He argues that the magistrate should have asked him whether he was satisfied with his attorney and whether he had discussed all possible defenses with his attorney, before taking his plea on December 11. Bastian also asserts that the number of failed attempts to elicit his plea required the court to inquire whether his decision to plead was knowing and voluntary.

Bastian does not contend the magistrate judge violated Rule 11 in taking his plea. He explained the rights Bastian was giving up by pleading guilty. Bastian then stated he had reviewed the plea agreement with his attorney before signing it and had no questions about it. The magistrate obtained a factual basis for the plea. He also asked Bastian whether anyone had forced or pressured him to plead guilty or made any promises to induce his plea, other than those in the plea agreement. Bastian, under oath, answered "No."

Rule 11 does not require the court to ask a defendant whether he is satisfied with his attorney. While such dissatisfaction may be considered in determining whether a defendant has established a fair and just reason to withdraw his plea, *see United States v. McNeely*, 20 F.3d 886, 888 (8th Cir. 1994), it is not dispositive. Bastian's alleged dissatisfaction with his attorney did not negate the voluntariness of his plea, and the district court properly found that it did not provide a "fair and just reason" for withdrawing it. Likewise, "the mere fact that he later changed his mind is not among the fair and just reasons that [Rule 11(d)(2)(B)] contemplates for allowing a defendant to withdraw a plea." ***Gamble***, 327 F.3d at 665. The district court did not abuse its discretion in denying Bastian's motion to withdraw his plea.

## II.

## A.

Bastian argues the district court erred in several ways at sentencing. He contends the district court should not have assessed a five-level upward adjustment under U.S.S.G. § 2G2.2(b)(7)(D) based on the offense involving 600 or more images of child pornography. Relying on *Mistretta v. United States*, 488 U.S. 361, 407 (1989), he claims this enhancement violates the separation-of-powers doctrine because Congress, rather than the Sentencing Commission, promulgated it. *See* **Pub. L. 108-21, 117 Stat. 650, 672-73 (2003)**. Constitutional challenges to the Guidelines are reviewed de novo. **United States v. Martinez**, 339 F.3d 759, 761 (8th Cir. 2003).

Bastian's reliance on *Mistretta* is misplaced. *Mistretta* considered whether Congress' delegation to an independent Federal Sentencing Commission to promulgate the Sentencing Guidelines violated the separation-of-powers doctrine. *Mistretta*, 488 U.S. at 371. The Court held that it did not. Refuting Bastian's argument, *Mistretta* says that "the Commission is fully accountable to Congress, which can revoke or amend any or all of the Guidelines as it sees fit." *Id.* at 393-94.

## B.

According to Bastian, the district court erred in denying him a two-level downward adjustment for acceptance of responsibility under § 3E1.1(a). "A district court's factual determination of the defendant's entitlement to an offense level decrease for acceptance of responsibility is 'entitled to great deference, and we will reverse it only if it is so clearly erroneous as to be without foundation.'" **United States v. Canania**, 532 F.3d 764, 772 (8th Cir. 2008), *quoting* **United States v. Spurlock**, 495 F.3d 1011, 1014 (8th Cir. 2007). A defendant's attempt to withdraw his guilty plea may be evidence that he did not accept responsibility for his offense.

*See **United States v. Smith***, 422 F.3d 715, 727 (8th Cir. 2005); ***United States v. Newson,*** 46 F.3d 730, 734 (8th Cir. 1995) (affirming the denial of an acceptance of responsibility reduction where the defendant attempted to withdraw his guilty plea).

The district court found that Bastian's reluctance to plead guilty and attempt to withdraw his plea showed he had not accepted responsibility. The court also found he made misrepresentations in both his pro se motion to withdraw and the attorney-filed motion to withdraw. Additionally, the district court found that at allocution, Bastian made statements inconsistent with acceptance of responsibility, denying that his conduct hurt anyone and claiming that one minor victim consented. The district court did not clearly err in denying a downward adjustment for acceptance of responsibility.

## C.

Bastian argues the district court should not have applied an upward adjustment for distribution for the expectation of receipt of a thing of value under § 2G2.2(b)(3)(B). This court reviews "the district court's construction and application of the sentencing guidelines de novo, and we review its factual findings regarding enhancements for clear error." ***United States v. Cordy***, 560 F.3d 808, 817 (8th Cir. 2009). Section 2G2.2(b)(3)(B) provides for a five-level upward adjustment to the base offense level if an offense involved "[d]istribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain." The application notes define "distribution for receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain" as:

> any transaction, including bartering or other in-kind transaction, that is conducted for a thing of value, but not for profit. "Thing of value" means anything of valuable consideration. For example, in a case involving the bartering of child pornographic material, the "thing of value" is the child

pornographic material received in exchange for other child pornographic material bartered in consideration for the material received.

**§ 2G2.2(b)(3)(B), cmt. app. n.1**.

This court has applied the enhancement in cases where the defendant received and shared child pornography files through peer-to-peer file-sharing networks. *See United States v. Ultsch*, 578 F.3d 827, 829-30 (8th Cir. 2009); *United States v. Stults*, 575 F.3d 834, 849 (8th Cir. 2009); *United States v. Griffin*, 482 F.3d 1008, 1012-13 (8th Cir. 2007). "[W]hether a defendant qualifies for the five-level enhancement must be decided on a case-by-case basis, with the government bearing the burden of proving that the defendant 'expected to receive a thing of value–child pornography–when he used the file-sharing network to distribute and access child pornography files.'" *Stults*, 575 F.3d at 849, *quoting Griffin*, 482 F.3d at 1013. The government can meet its burden with direct evidence, such as an admission by the defendant that he knew he was using a file-sharing network, and could download files from others who could download files from him. *See Griffin*, 482 F.3d at 1013. The government can also meet its burden with indirect evidence, such as the defendant's technical sophistication in computers, inferring that he knew that by using a file-sharing network, he could download files from others who could also access his files. *See Stults*, 575 F.3d at 849.

Bastian used the peer-to-peer filing-sharing network Limewire to download child pornography. He stored the downloaded images in a shared folder, accessible by other Limewire users. Bastian argues there is no evidence, direct or indirect, that he knew his files were available to others. He never admitted such knowledge, nor is there evidence he was a sophisticated user of Limewire. He also asserts there is no evidence that he expected others to share files in exchange for those he made available.

-7-

This court need not decide whether the district court erred in applying the enhancement because any error was harmless. First, the district court concluded that Bastian's total adjusted offense level was 50. The Guidelines limit a defendant's total adjusted offense level to a maximum of 43. *United States v. Raplinger*, 555 F.3d 687, 695 (8th Cir. 2009), *citing* **U.S.S.G. Ch. 5, Pt. A, cmt. app. n.2**. Even if this five-level enhancement were removed, Bastian's total adjusted offense level is 43. Second, Bastian's advisory Guideline range was life imprisonment. Assessing the 18 U.S.C. § 3553(a) factors, the district court stated that Bastian's sentence would be 600 months "even if the court erred in interpreting or applying the Guidelines." Therefore, any error in assessing a five-level upward adjustment under § 2G2.2(b)(3)(B) was harmless.

## D.

Bastian claims that at sentencing, the district court erred in admitting three video interviews of minor females who said he had sexually abused them. The district court considered the tapes in applying upward adjustments under § 2G2.2(b)(5) (pattern of activity involving sexual abuse or exploitation of a minor), and § 4B1.5(b)(1) (repeat and dangerous sex offender). "The rules of evidence do not apply at sentencing, but information considered by the sentencing court must have 'sufficient indicia of reliability to support [its] probable accuracy.'" *United States v. Fleck*, 413 F.3d 883, 894 (8th Cir. 2005), *quoting* *United States v. Jones*, 195 F.3d 379, 385 (8th Cir. 1999). This court reviews a district court's determination of whether hearsay evidence is sufficiently reliable for sentencing purposes for abuse of discretion. *United States v. Stavig*, 80 F.3d 1241, 1247 (8th Cir. 1996).

The district court found the testimony in the videotapes sufficiently reliable. The court found that all three interviews were conducted by child welfare professionals, who tested the girls on their ability to understand and tell

the truth; each girl showed she could distinguish truth from dishonesty; the interviewers asked open-ended questions and refrained from leading questions; the girls provided consistent answers to questions posed in various forms; each girl provided highly detailed information about Bastian's conduct; and each story contained remarkable similarities in the details of the abuse. Bastian argues the tapes should not have been admitted because the state charges stemming from the allegations by the three girls were dismissed. The district court stated that the fact of the dismissals did not diminish the credibility of the statements in the videos. The district court did not abuse its discretion by admitting the videotapes. In any event, the district court also supported its imposition of the enhancements under § 2G2.2(b)(5) and § 4B1.5(b)(1) with conduct unrelated to the allegations in the videotapes (which Bastian does not challenge on appeal).

## III.

The judgment of the district court is affirmed.

COLLOTON, Circuit Judge, concurring.

I concur in the opinion of the court, including its holding that any error in the district court's application of USSG § 2G2.2(b)(3)(B) was harmless. I write separately regarding the government's apparent interpretation of this specific offense characteristic.

The five-level adjustment at issue applies when a defendant's offense involved distribution of child pornography "*for* the receipt, or expectation of receipt, of a thing of value." USSG § 2G2.2(b)(3)(B) (emphasis added). As the court explains, this means "any *transaction*, including bartering or other in-kind transaction, that is conducted for a thing of value, but not for profit." USSG § 2G2.2, comment. (n.1) (emphasis added).

The government's position, as articulated in this case, seems to be that if a defendant installs a file-sharing software program on his computer, knows that the program allows both the distribution and the receipt of computer files, and then distributes and receives images containing child pornography through use of the software, the adjustment applies. This position admittedly finds some support in *United States v. Griffin*, 482 F.3d 1008, 1012-13 (8th Cir. 2007). We have tried to "clarify" *Griffin* in *United States v. Ultsch*, 578 F.3d 827, 829-30 (8th Cir. 2009), and *United States v. Stults*, 575 F.3d 834, 849 (8th Cir. 2009), but probably have not sufficiently narrowed some of *Griffin*'s language and reasoning.

The difficulty with the government's position is that it seems to eliminate the need for a "transaction." If a file-sharing program allows the user to download child pornography from other computers, *whether or not* the user makes his own images available to other parties, then the user's distribution is gratuitous. It is not *for* the receipt of a thing of value, because it is unnecessary to the receipt of a thing of value.

Other prosecutions have demonstrated that a defendant received a specific "thing of value" *in exchange for* the distribution of images through a file-sharing program. *E.g.*, *United States v. Geiner*, 498 F.3d 1104, 1111 (10th Cir. 2007); *United States v. Rogers*, 666 F. Supp. 2d 148, 153-54 (D. Me. 2009) (collecting cases). But simply showing that a defendant made images available to others through a file-sharing software program and downloaded images from others through the same program, with knowledge that the software allowed such distribution and receipt, is a tenuous basis on which to urge the application of § 2G2.2(b)(3).

_____