# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

——————

No. 05-3716

——————

United States of America,

      Plaintiff - Appellee,

v.

Kristopher Kai Hamberg,

      Defendant - Appellant.

\* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the District
of North Dakota.

[UNPUBLISHED]

——————

Submitted: May 15, 2006
Filed: May 19, 2006

——————

Before BYE, HANSEN, and SMITH, Circuit Judges.

——————

PER CURIAM.

Kristopher Kai Hamberg was convicted by a jury of one count of conspiracy to possess with intent to distribute and conspiracy to distribute controlled substances, 21 U.S.C. §§ 841(a) and 846, and 18 U.S.C. § 2, and two counts of using a firearm during a drug trafficking crime, 18 U.S.C. §§ 924(c)(1)(A) and 2. On appeal, Hamberg argues there was insufficient evidence to convict him and the district court[1] erred when it refused to allow evidence showing he had been acquitted in state court of attempted murder. We affirm.

———————————————

[1]The Honorable Rodney S. Webb, United States District Judge for the District of North Dakota.

Viewed in the light most favorable to the verdict, <u>United States v.</u> <u>Calderin-Rodriguez</u>, 244 F.3d 977, 983 (8th Cir. 2001), the evidence reveals the following. In 2003, Hamberg became involved in drug dealing activities with several people in the Fargo, North Dakota area. At trial, Veronica Bullbear testified she and her boyfriend, Jason Burnside, began purchasing methamphetamine from Hamberg in the summer of 2003. Over time, Burnside fell into arrears and Hamberg would only sell to Bullbear, who became a distributor and received approximately one pound of methamphetamine from Hamberg. Bullbear testified that in the fall of 2003, she went to Hamberg's apartment and he sexually assaulted her, claiming it was in payment for Burnside's outstanding drug debt. After the assault, Hamberg threw methamphetamine at her and said she would be working for him. He also gave her a quarter-pound of marijuana. Following the assault, Hamberg continued to search for Burnside and finally located him at the apartment of Michelle Mercer. Bullbear testified she and Burnside had gone to Mercer's apartment after being told they could obtain methamphetamine. While they were at the apartment with Mercer and Anthony Francis, Hamberg arrived and struck Burnside twice in the face with a handgun which discharged during the assault.

Burnside testified he began purchasing methamphetamine from Hamberg in the summer of 2003, and obtained approximately two to three ounces over time. During his involvement with Hamberg, Burnside saw him in the possession of two 9-mm handguns. He testified Hamberg told him the guns were used to force people to do what he wanted, "[l]ike if he needed to scare somebody to get him his money . . . ." Burnside further testified that in August 2003, Hamberg was looking for him because he owed approximately $400 for methamphetamine and Bullbear owed Hamberg for the quarter-pound of marijuana. In September 2003, Francis convinced the pair to accompany him to Mercer's apartment under the guise of obtaining methamphetamine. Once there, Hamberg showed up and assaulted Burnside, striking him in the face with the butt of a gun. Burnside testified Hamberg pointed the gun at his face and when he reached up to push it away, it discharged.

Brent Duursma, another drug-acquaintance of Hamberg's, testified he distributed approximately three to four ounces of methamphetamine for Hamberg over a two or three month period in the summer of 2003. Duursma observed Hamberg carrying a .45-caliber handgun and testified he carried it "in case [Duursma] or any of [his] friends wanted to try and rob him." Duursma testified he was aware Burnside owed Hamberg money on a drug debt, and described an incident where Hamberg tracked Duursma down and pointed a gun at his head, threatening to shoot if he did not tell Hamberg where to find Burnside. Duursma also testified Hamberg threatened him over the telephone, telling him he would get worse than Burnside. Finally, Duursma testified to an occasion when he was at Mercer's apartment and Hamberg threatened him with a gun causing him to flee the apartment.

Anthony Francis testified he found out Burnside owed Hamberg money and offered to find Burnside and to help Hamberg collect other drug debts. Francis lured Burnside to Mercer's apartment and contacted Hamberg who arrived and assaulted Burnside. Francis testified Hamberg struck Burnside with a handgun and the gun discharged during the assault. Francis testified Hamberg said "I can't believe I missed," after the gun discharged.

Damien Walkin testified he became acquainted with Hamberg while in jail with him in the fall of 2003. He testified Hamberg solicited him to help with an alibi and later arranged to have Walkin bailed out of jail. Walkin further testified Hamberg admitted using Francis to lure Burnside to Mercer's apartment and bragged about "smok[ing] him twice with a pistol." Walkin admitted using methamphetamine with Hamberg and stated he observed him carrying a handgun.

Michelle Mercer also met Hamberg during the summer of 2003. She obtained small quantities of methamphetamine from him and assisted with his drug operations. Mercer saw him carrying a handgun and saw him with as much as three ounces of

methamphetamine at a time. Mercer's testimony confirmed the incidents involving Hamberg, Burnside and Duursma that occurred at her apartment.

Finally, the government called Marcel Vasquez, Hamberg's original co-defendant who entered into a plea agreement with the government. Vasquez testified he was sent to Fargo by another drug dealer to collect $10,000 from Craig Cardenas – a local dealer. Cardenas had been supplying Hamberg with drugs, and at a meeting attended by all three, it was agreed Vasquez would begin supplying Hamberg. Vasquez testified he supplied Hamberg with approximately thirty ounces of methamphetamine and observed him possess firearms on various occasions.

Hamberg was charged in state court with attempted murder in connection with the assault on Burnside. In February 2004, he was tried and acquitted. Thereafter, the United States indicted him on one count of conspiracy to possess with intent to distribute and conspiracy to distribute controlled substances, and three counts of using a firearm during a drug trafficking offense. At trial, the district court advised the parties they could only refer to the state trial as a "prior proceeding," and were not to give the jury any further information. During Walkin's testimony, however, he testified to meeting Hamberg while Hamberg was in jail on attempted murder charges. Hamberg's attorney did not object, but before cross-examining Walkin requested a sidebar and expressed concern about the reference to the attempted murder charge: "I'm thinking I'm interested in having an explanation in fairness of completeness about what happened in that proceeding . . . ." Hamberg's attorney did not request a curative instruction, but instead wanted Walkin, on cross-examination, to testify Hamberg was acquitted in state court. The district court refused the request, explaining it would not allow the "jury to know about the fact that he has been acquitted or convicted of that prior charge." Hamberg's attorney took no further action. The jury found Hamberg guilty on all but one of the firearms counts and he was sentenced to 660 months imprisonment.

-4-

On appeal, Hamberg argues the evidence was insufficient to sustain the convictions and the district court erred when it refused to allow evidence of his acquittal on the state charge of attempted murder.

In attacking the sufficiency of the government's evidence, Hamberg does not argue the government failed to prove a specific element of the offenses. Rather, he attacks the witnesses' testimony generally, arguing they were unsavory types who entered into agreements with the government and had great incentive to lie.

Testimony does not become legally insufficient because the witness stands to gain by lying; the defendant is entitled to cross-examine such witnesses to expose their motivations, and it is up to the jury to decide whether the witness is telling the truth despite incentives to lie. In Hoffa v. United States, 385 U.S. 293 (1966), the conviction depended upon the testimony of an informer who received both money and clemency for his cooperation. The Supreme Court held his testimony was not constitutionally inadmissible because he had a motive to lie: "The established safeguards of the Anglo-American legal system leave the veracity of a witness to be tested by cross-examination, and the credibility of his testimony to be determined by a properly instructed jury." Id. at 311.

Hamberg had every opportunity to cross-examine the witnesses about their cooperation and dealings with the government, and despite vigorous cross-examination the jury found them credible. Further, there was nothing to suggest the testimony was inherently incredible. Therefore, the evidence was sufficient.

Hamberg next argues the district court erred in refusing to allow evidence of his state-court acquittal on the attempted murder charge.[2] Hamberg appears to argue it

---

[2]The government argues defense counsel's failure to object at the time the testimony was elicited waived any objection to Walkin's testimony. We assume, without deciding, the issue was preserved.

was unfairly prejudicial for the jury to discover he was charged with attempted murder without also knowing he was acquitted. Assuming, without deciding, the district court should have allowed evidence of Hamberg's acquittal, any error was harmless beyond a reasonable doubt.

We will not reverse a conviction if an evidentiary error is harmless. United States v. Byler, 98 F.3d 391, 394 (8th Cir. 1996). An evidentiary error is harmless if the substantial rights of the defendant were unaffected and the error did not influence or had only a slight influence on the verdict. United States v. Blue Bird, 372 F.3d 989, 994 (8th Cir. 2004). To determine whether the error was harmless the court reviews the entire record to determine whether the substantial rights of the defendant were prejudiced. Id.

It can safely be said in this case the evidence against Hamberg was substantial. No less than seven witnesses testified they observed Hamberg possess and distribute drugs or were directly involved with Hamberg in drug dealing operations. Several of those witnesses testified they saw Hamberg use, carry and possess weapons in furtherance of his drug trafficking operations. While potentially prejudicial, the unsolicited reference to the attempted murder charge was harmless when viewed in the context of the overwhelming evidence of guilt.

The judgment of the district court is affirmed.

_____